Filed 3/12/15

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Sacramento)**

----

| | |
|---|---|
| COUNTY OF SONOMA, as Successor, etc., | C075120 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2013-80001378-CU-WM-GDS) |
| v. | |
| MICHAEL COHEN, as Director, etc., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Eugene L. Balonon, Judge.  Affirmed.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Mark R. Beckington and George M. Waters, Deputy Attorneys General, for Defendant and Appellant.

Goldfarb & Lipman, Juliet E. Cox; Bruce D. Goldstein, County Counsel, Steven S. Shupe, Deputy County Counsel, for Plaintiff and Respondent.

This is another case arising out of the 2011 legislation that brought about the

"Great Dissolution" of California's redevelopment agencies.  (See *City of Pasadena v.*

1

*Cohen* (2014) 228 Cal.App.4th 1461, 1463 (*Pasadena*).)  This enactment (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 5X (hereafter chapter 5X)), which focused chiefly on the Health and Safety Code,[1] barred any new obligations for redevelopment activity and provided a process to wind up the obligations of the nearly 400 redevelopment agencies then existing, in order that the ever-encroaching "tax increment" share of property taxes paid to the redevelopment agencies could then be redistributed instead to the counties, cities, special districts, and school districts otherwise entitled to these revenues.  (*Pasadena*, *supra*, at p. 1463 & fn. 2; *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 246-247 (*Matosantos*).)

Plaintiff County of Sonoma (Sonoma), in its capacity as the "successor agency" (§§ 34171, subd. (j), 34173, 34177) to the former Sonoma County Community Redevelopment Agency (Sonoma Redevelopment Agency), "reentered" into agreements between the Sonoma Redevelopment Agency and itself that were now invalid, after it received authorization from its "oversight board"[2] (§§ 34178, subd. (a), 34180, subd. (h)) in March 2012 to take this action.  Defendant Department of Finance, through its Director, Michael Cohen (the Department), appeals from the trial court's ruling that these are "enforceable obligations" of a former redevelopment agency that continue to be payable out of property taxes before distribution of the remainder to the taxing entities. (§§ 34171, subd. (d),  34183, subd. (a)(2)(C)).

The Department argues the agreements are not enforceable obligations because the definition specifically excludes agreements between former redevelopment agencies

---

[1]  Undesignated statutory references are to the Health and Safety Code.

[2]  An oversight board has supervisory power over successor agencies.  (§§ 34171, subd. (f), 34179.)  It is composed primarily of the representatives of the "taxing entities" otherwise entitled to the net property taxes after payment of enforceable obligations (§§ 34171 subd. (k), 34183, subd. (a)(4), 34179, subd. (a)), to which it owes fiduciary duties (§ 34179, subd. (i)).

and "sponsoring" entities.[3] (§ 34171, subd. (d)(2).) The Department asserts that the statutory power of an oversight board to authorize a successor agency to reenter into this type of agreement is contrary to legislative intent, and to June 2012 legislation. We disagree and shall affirm the trial court's judgment and writ directing the Department to treat two county redevelopment agency agreements as enforceable obligations.

## FACTUAL AND PROCEDURAL BACKGROUND

This case turns on the legal issue of statutory interpretation. Consequently, even though the parties have supplied an exhaustive account of the nature of the projects that underlie the challenged reentry agreements and the path their dispute has taken on the way to the courthouse, the specific underlying facts are mostly immaterial.

In January 2011, the Sonoma Redevelopment Agency and Sonoma entered into agreements under which the Sonoma Redevelopment Agency agreed to fund the acquisition of a former shopping center for redevelopment (including the cleanup of toxic wastes), and improvements to State Highway 12. In January 2012, Sonoma adopted a resolution to accept the role of successor agency to the Sonoma Redevelopment Agency. In March 2012, Sonoma's oversight board adopted a resolution that authorized Sonoma to reenter into these agreements. It found these were in the best interests of the county's taxing entities because they would both ameliorate adverse conditions in the project areas and result in increased property values in surrounding areas.[4] Sonoma executed reentry agreements for the two projects effective as of the date of the oversight board's resolution.

---

[3] We apologize for the plethora of statutory citations and footnotes, but we are in the land of terms of art. A "sponsoring entity" is that which authorized the creation of its redevelopment agency. (§ 34171, subd. (n).)

[4] We note that the Department does not challenge the sufficiency of the factual bases of these findings, beyond pejoratively describing them as boilerplate.

3

In February 2012, Sonoma prepared a "Recognized Obligation Payment Schedule" (ROPS)[5] for the period of January to June 2012 that included the two projects (in items 70 & 71) as enforceable obligations of the Sonoma Redevelopment Agency. The oversight board's March 2012 resolution had approved this ROPS (ROPS I). Sonoma transmitted copies of ROPS I to the Department. (§§ 34177, subd. (*l*)(2)(B), 34180, subd. (g).) The Department asserted its authority (§ 34179, subd. (h)) to review "one or more" items, after which it disallowed (inter alia) items 70 and 71 as contracts between a former redevelopment agency and its sponsoring entity. The Department thereafter also disallowed inclusion of the two projects as enforceable obligations 12 and 13 in the approved ROPS for the period of July to December 2012 (ROPS II) for the same reason.

This brings us to the ROPS at issue for the period of January to June 2013 (ROPS III), approved in August 2012, which yet again included the two projects as enforceable obligations 70 and 71. The Department eventually disallowed them one more time in December 2012, expanding upon its previous rationale; it recognized that oversight boards had statutory authorization to approve a reentry agreement with a sponsoring entity as an enforceable obligation, but the Department asserted that the definition of enforceable obligations in section 34171 did not itself expressly include reentry agreements, and sections 34178 and 34180 did not expressly contain a "notwithstand" reference to section 34171.

Sonoma filed its petition for writ of mandate in January 2013. It sought a declaration that the two projects were enforceable obligations and a writ of mandate directing the Department to approve their inclusion in ROPS III. Sonoma also sought a ruling that it was entitled to reimbursement for the Department's incorrect classification

---

[5] This is "the document setting forth the minimum payment amounts and due dates of payments required by [the] enforceable obligations" of a former redevelopment agency. (§§ 34171, subd. (h), 34177, subds. (a)(1), (*l*) & (m).)

4

of certain expenditures as administrative expenses incurred in connection with the ROPS III, and for a "true-up"[6] payment of $2.2 million (rounded) that its auditor-controller assessed against it in July 2012 pursuant to section 34183.5 (which subjects 2011-2012 tax increments distributed solely to former redevelopment agencies prior to the court-reformed effective date of the Great Dissolution legislation[7] to the distribution mechanism of section 34183), which Sonoma had paid under protest. The trial court found the two agreements were enforceable obligations. It also concluded that Sonoma failed to satisfy its burden of proof in its challenge to the designation of the expenses as administrative (a ruling not at issue on appeal), and the true-up payment—while valid (another ruling not at issue on appeal)—required recomputation of the total assessment in order to deduct the amount that was attributable to these additional enforceable obligations (the trial court directing the Department to reimburse the amount in adjustments to future ROPS).

## DISCUSSION

While we accord at least " 'weak deference' " to an agency's interpretation of its governing statutes where its expertise gives it superior qualifications to do so (*Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1215-1216 [contrasting the " 'strong deference' " standard in other jurisdictions]), the issue nonetheless is one subject to our de novo review (*State Compensation Ins. Fund v. Brown*

---

[6] This is a slang expression that the Department employs, presumably derived from the verb "to true" (adjusting to make accurate). (E.g., *Pacific Gas & Electric Co. v. Department of Water Resources* (2003) 112 Cal.App.4th 477, 487.)

[7] *Matosantos*, *supra*, 53 Cal.4th at pages 274 through 276 had judicially reformed the October 1, 2011 effective date generally to February 1, 2012, and in the context of section 34183 had extended the date for county auditor-controllers' initial distributions of property tax from January 16 to May 16, 2012 (by which time the fall 2011 tax increments that should have been subject to the provisions of section 34183 had been distributed to the Sonoma Redevelopment Agency in December 2011).

(1995) 32 Cal.App.4th 188, 199; *Troy Gold Industries, Ltd. v. Occupational Safety & Health Appeals Bd.* (1986) 187 Cal.App.3d 379, 387, fn. 4).

The exclusion of agreements between the former redevelopment agencies and their sponsors in the definition of enforceable obligations (§ 34171, subd. (d)(2) [also listing exceptions not relevant in the present case]) and the express legislative invalidation of these agreements (§ 34178, subds. (a) & (b) [latter also including exceptions not relevant in the present case]) reflect legislative recognition that "often" these agreements were not the product of arm's-length negotiations because the two bodies had "conjoined" membership that was not reflective of the interests of the other taxing entities. (*Matosantos*, *supra*, 53 Cal.4th at pp. 258, fn. 12, 266.) From this premise, the Department argues that an interpretation of the 2011 version of sections 34178 and 34180[8] (see chapter 5X, § 7) that would allow the reentry agreements to become enforceable obligations with the permission of an oversight board is contrary to the overall intent behind the Great Dissolution legislation.[9]

This type of "legislative spirit" interpretation is not well taken. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice—and it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law. Where, as here, 'the language of a provision . . . is sufficiently clear in its context and not at odds with the

---

[8] As we will detail presently, 2012 legislation made a significant change to both statutes.

[9] The Department derives this contention from uncodified statements of legislative purpose in the act (chapter 5X, § 1(j)) and other statutes—in particular the 2012 enactment of section 34177.3, which contains a prohibition against successor agencies creating new enforceable obligations postdating the 2011 enactment of chapter 5X or any new diversions of property taxes beyond the existing enforceable obligations, along with a proviso that the statute was "declaratory of existing law" (§ 34177.3, subd. (e)).

legislative history, . . . "[we should not] examine the additional considerations of 'policy' . . . that may have influenced the lawmakers in their formulation of the statute." ' " (*Rodriguez v. United States* (1987) 480 U.S. 522, 525-526 [94 L.Ed.2d 533, 538]; accord, *Foster v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1505, 1510 [purpose of law cannot supplant legislative intent expressed in particular statute].)

The 2011 version of sections 34178, subdivision (a) and 34180, subdivision (h) (hereafter former sections 34178(a) and 34180(h), respectively) unambiguously authorized a successor agency to request approval of a reentry agreement, and an oversight board to grant the request.[10] Under the well-established interpretive principle just cited, this express grant of authority cannot simply be negated through resort to the spirit of the Great Dissolution law. We thus turn to the Department's interpretive efforts derived from the interplay of the various actual statutes.

The Department argues that the Sonoma oversight board could not approve acts of Sonoma that were not authorized for successor agencies. But this truism does not have any application to the present dispute. As originally enacted, all *sponsor-former redevelopment agency* agreements were not included in the definition of enforceable agreements, and were legislatively invalidated. (§§ 34171, subd. (d)(2), former 34178(a).) However, certain of these *sponsor-former redevelopment agency* agreements were allowed to remain in effect as enforceable obligations. (§§ 34171, subd. (d)(2),

---

**10** Former section 34178(a) then provided: "Commencing on the operative date of this part, [any] agreements . . . between the [sponsoring entity] and the redevelopment agency are invalid and shall not be binding on the successor agency; provided, however, that a successor entity wishing to enter or reenter into agreements with [its sponsoring entity] . . . may do so upon obtaining the approval of its oversight board." (Chapter 5X, § 7.)

Former section 34180(h) then provided: "All of the following successor agency actions shall first be approved by the oversight board: [¶] . . . [¶] (h) A request by the successor agency to enter into an agreement with [its sponsoring entity]." (Chapter 5X, § 7.)

34178, subd. (b).)  In addition, *successor agencies* with the approval of their oversight boards could *also* establish a reentry agreement as an enforceable obligation in an ROPS. (Former § 34178(a).)  Thus, an oversight board is not approving an *unauthorized* act.

It is also irrelevant that section 34171 does not include reentry agreements in the *definition* of enforceable obligations,[11] or that former sections 34178 and 34180 did not contain "notwithstand" references to section 34171.  The subject of section 34171 (in subdivision (d)(2)) is the agreements of the *former redevelopment agencies*, and not the powers of oversight boards or successor agencies; on the other hand, the subjects of the other two statutes *are* the authority of the oversight board and successor agency regarding agreements of the *successor agencies*.  The Department's suggested reading of the statutes as limiting the oversight board's power of approval only to the exceptions in section 34178, subdivision (b) is also not plausible.  The latter are a limited class of *former redevelopment agency* agreements that are deemed enforceable obligations *without* any approval from an oversight board, and thus the Department's interpretation would leave the grant of power without any meaning because *successor agencies* do not have any need to reenter into a binding enforceable obligation.

This interpretation is not at odds with the overall purpose of the Great Dissolution law such that we can apply the "absurd result" doctrine and disregard plain statutory language, as the Department urges.  (See *County of Sacramento v. Superior Court* (2012)

---

**11** We note that an approved reentry agreement arguably could be among those included in a different section of the definitions of enforceable obligations:  "Any legally binding and enforceable agreement . . . that is not otherwise void as violating the debt limit or public policy" (although the  successor agencies and oversight boards are empowered to terminate such contracts if they so choose).  (§ 34171, subd. (d)(1)(E).)  However, as it is not necessary to rely on it, and as it received the glancing attention of only Sonoma, we do not explore the significance of this subdivision further.  (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061 (*Sourcecorp*) [in absence of adequate argument, court not obligated to consider issue].)

8

209 Cal.App.4th 776, 782, citing *Rehman v. Department of Motor Vehicles* (2009) 178 Cal.App.4th 581, 586, 588.) Rather, authorization of reentry agreements is a rational escape hatch which allows oversight boards composed of the taxing entities that are otherwise entitled to the benefits of the law to determine that *certain* of the sponsor-former redevelopment agency agreements present sufficient countywide benefit to them such that it is in their best interests to approve reentry. It is hyperbole on the part of the Department to suggest that this will "create a major exclusion to [its] authority to review" under which oversight boards will capriciously and without due consideration of their fiduciary duties approve *all* reentries of sponsor-former redevelopment agency agreements as new enforceable obligations (decisions which the Department—along with the State Controller or any affected taxing entity—in fact has the standing to challenge (§ 34177, subd. (a)(2)).

We turn to the Department's argument regarding the present version of sections 34178, subdivision (a) (hereafter current section 34178(a)) and 34177.3, subdivision (a) (hereafter section 34177.3(a)). The 2012 legislation added a sentence to former section 34178(a), so that it now concludes: "A successor agency or an oversight board shall not exercise the powers granted by this subdivision to restore funding for an enforceable obligation that was deleted or reduced by the Department . . . pursuant to subdivision (h) of Section 34179 unless it reflects the decisions made during the meet and confer process with the Department . . . or pursuant to a court order."[12] (Current § 34178(a).) To the

---

[12] The legislation also amended section 34180, subdivision (h) to add, "An oversight board shall not have the authority to reestablish *loan agreements* between the successor agency and the [sponsoring entity] except as provided in [section 34191.1 et seq.]. Any actions to reestablish *any other agreements* that are in furtherance of enforceable obligations, with [sponsoring entities] are invalid until they are included in an approved and valid [ROPS]." (Italics added.) The parties do not discuss the amendment's effect, and we will not strike out on our own. (*Sourcecorp*, *supra*, 206 Cal.App.4th at p. 1061, fn. 7.)

extent the Department again derives a general legislative spirit from these 2012 enactments to defeat the express language of former section 34178(a), we do not find the argument persuasive. This leaves the Department's claim that the June 2012 enactments should be given retroactive effect to invalidate the March 2012 approval of the reentry agreements; in a scant page of argument, the Department asserts "there is no doubt" that the legislation is retroactive because section 34177.3 expressly indicates this and the "context" of current section 34178(a) and other enactments "make[] it clear that both were meant to be retroactive."

The general rule is that a statute overcomes the presumption of prospective-only effect only where there is express language to the contrary or if there are other indicia of legislative intent that provide a " 'clear and unavoidable implication' " of retroactive intent. (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475.)

*If* declaratory of "existing" law, applying section 34177.3(a)'s prohibition on a successor agency's creation of new enforceable obligations to former section 34178(a) would (as the trial court concluded) render the unambiguous grant of authority in the former language of the latter without any effect. That, as already discussed, is not a permissible interpretation, so it is instead more plausible to read the authority to approve reentry agreements as a limited exception to the existing law expressed in section 34177.3(a) when in the interest of taxing entities to do so. An interpretation otherwise would render section 34177.3(a) a *change* in the preexisting law. (In any event, it would not appear that reentry agreements are the subject of the prohibition in section 34177.3(a), because as a matter of definition one cannot "*re*enter" a *new* obligation.)

The 2012 amendment, current section 34178(a) (Stats. 2012, ch. 26, § 15), on the other hand, is indisputably a change in the law, without any declaration that it nonetheless

is to be given retroactive effect.[13]  The Department suggests the current provisions for retroactive application of the 2012 legislation to invalidate *asset transfers* from former redevelopment agencies to sponsor entities dating back to January 2011 (§ 34167.5) and from successor agencies to sponsor entities dating back to January 2012 (former § 34178.8, as added by Stats. 2012, ch. 26, § 15) indicate we should *infer* the intent to apply a similar invalidating effect to existing approvals of reentry agreements.  Putting aside the disruptive effect this would have on the existing agreements (regardless of the legitimacy of such legislative action) or the justification for subjecting *only* sponsor-successor agency agreements to this disruption, we do not find this to be a plausible interpretation of the *absence* of any express retroactive application to reentry agreements.  Rather, we presume the absence is an *intentional* legislative lacuna, reflecting a belief that retroactive application was not necessary and prospective application would be sufficient to meet the purposes of the Great Dissolution law.  (*People v. McRoberts* (2009) 178 Cal.App.4th 1249, 1256 [as with legislative additions, court should not adopt interpretation that renders legislative omission surplusage].)

Having determined that the trial court correctly interpreted the statutes in favor of Sonoma, we do not need to reach Sonoma's alternative argument that the Department forfeited objections to the items in ROPS III because it did not challenge them in a timely fashion.  Sonoma also asks that we affirm the direction to recalculate the effect of the new enforceable obligations on its true-up payment, which the Department conceded in the event we rejected its interpretation.

---

[13]  In its reply brief, the Department makes an abbreviated argument that retroactivity is not an issue because its *disapproval* of ROPS III did not occur until after June 2012.  The tardy presentation of this argument absolves us of any duty to respond in more plenary fashion (*Sourcecorp*, *supra*, 206 Cal.App.4th at p. 1061, fn. 7) than observing it misses the focus of the claim of retroactive effect.

## DISPOSITION

The judgment is affirmed.  Plaintiff shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)  (***CERTIFIED FOR PUBLICATION***)


        BUTZ        , J.


I concur:


      BLEASE      , Acting P. J.

Mauro, J., concurring and dissenting:

I concur in the disposition. The result is based on an interpretation of relevant statutory language that controlled during a finite period of time: a time when the statutory scheme expressly authorized a successor agency to "enter or reenter" into agreements with its sponsoring entity regarding redevelopment activities if the successor agency obtained the approval of its oversight board. (Health & Saf. Code, § 34178, subd. (a).)[1] That window of opportunity came to an end when the Legislature and the Governor subsequently amended the statutory scheme to eliminate such authority.

Assembly Bill No. 26 (Stats. 2011, 1st Ex. Sess. 2011, ch. 5, § 7, pp. 5848-5862) (Assembly Bill 26) was enacted on June 29, 2011. Among other things, Assembly Bill 26 added section 34178, which authorized the reentered agreements in this case. But the Legislature and the Governor subsequently amended the Assembly Bill 26 statutory scheme when they approved Assembly Bill No. 1484 (Stats. 2012, ch. 26, §§ 6-35, pp. 1093-1124) (Assembly Bill 1484), a law that took effect on June 27, 2012. Assembly Bill 1484 eliminated the authority of a successor agency to enter or reenter into new enforceable obligations. (See, e.g., §§ 34173, subd. (g) ["As successor entities, successor agencies succeed to the organizational status of the former redevelopment agency, but without any legal authority to participate in redevelopment activities, except to complete any work related to an approved enforceable obligation."], 34177.3, subd. (a) ["Successor agencies shall lack the authority to, and shall not, create new enforceable obligations under the authority of the Community Redevelopment Law (Part 1 (commencing with Section 33000)) or begin new redevelopment work, except in compliance with an enforceable obligation that existed prior to June 28, 2011."].)

---

[1] Undesignated statutory references are to the Health and Safety Code.

1

In discussing the Department of Finance's contention that the current versions of sections 34178, subdivision (a) and 34177.3, subdivision (a) are retroactive, the majority opinion states that section 34177.3, subdivision (a) does not apply to reentered agreements because "as a matter of definition one cannot '*re*enter' a *new* obligation." (Maj. opn., *ante*, p. 10; see also *City of Emeryville v. Cohen* (2015) 233 Cal.App.4th 293, 309 ["Taking the last point first, section 34177.3, subdivision (a) refers to 'new' obligations, and by its terms does not preclude *reentry* into 'an enforceable obligation that existed prior to June 28, 2011.' "].)  To the extent the majority opinion in this case and the opinion in *City of Emeryville* suggest that reentered agreements must be continuing obligations rather than new obligations, I disagree.  The reentered agreements in this case are new obligations because the original agreements between the redevelopment agency and the County of Sonoma were invalidated by law.  (Stats. 2011, 1st Ex. Sess. 2011, ch. 5, § 7, p. 5854 [§ 31478, subd. (a)].)  County of Sonoma agrees the original agreements were not enforceable obligations binding the successor agency.  (See Stats. 2011, 1st Ex. Sess. 2011, ch. 5, § 7, pp. 5848-5849 [§ 34171, subd. (d)(1) & (2)].)  Rather, County of Sonoma argues the law allowed a successor agency to make "its own" agreements with the host community and allowed the successor agency's oversight board to "replace" the original agreements with agreements between the successor agency and the host community.  This understanding makes sense, because if the original agreements had been continuing enforceable obligations binding the successor agency, there would have been no need for the successor agency to "enter or reenter" into them; they would have continued to be enforceable under the law.  (Stats. 2011, 1st Ex. Sess. 2011, ch. 5, § 7, pp. 5848-5849, 5852-5854 [§§ 34170, subd. (d)(2), 34177, subds. (a), (c), (*l*), 34178, subd. (a)].)

Accordingly, the reentered agreements in this case were new obligations. Although section 34178, subdivision (a) gave the successor agency a window of authority

to enter or reenter into such new obligations with the approval of the oversight board, Assembly Bill 1484 subsequently eliminated that authority.

      MAURO     , J.