Filed 10/7/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

**(Sacramento)**

----

| | |
|---|---|
| CLAUDIA COVARRUBIAS et al., | C078237 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2013-80001650-CU-WM-GDS) |
| v. | |
| MICHAEL COHEN, as Director, etc. et al., | |
| Defendants and Respondents; | |
| CITY OF WINTERS, as Taxing Entity, etc., et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge.  Affirmed.

Western Center on Law & Poverty, S. Lynn Martinez, Richard A. Rothschild and Navneet Grewal; Legal Services of Northern California, Alysa E. Meyer and Sarah Steinheimer; Public Interest Law Project, Deborah A. Collins and Michael Rawson; Arnold & Porter and Steven L. Mayer for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Marc A. LeForestier and Nancy J. Doig, Deputy Attorneys General, for Defendants and Respondents.

Fagen Friedman and Fulfrost, Paul G. Thompson and Travis A. Brooks for Real Party in Interest and Respondent Winters Joint Unified School District.

No appearance for remaining Real Parties in Interest and Respondents.

Nominal plaintiffs Claudia Covarrubias, Veronica Alvarado, Rebecca Rivas, and Lucila Gomez[1] brought this action against Michael Cohen, in his capacity as the Director of the Department of Finance (the Department), in order to compel the Department to approve the City's continued payments of set-asides from "tax increment"—the increase above the tax base level attributed to redevelopment (*City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 492, fn. 4 (*Brentwood*))—to the fund for subsidized housing in the City's redevelopment project area that was previously mandated under redevelopment law (Health & Saf. Code, §§ 33334.2, subd. (a), 33334.3, subd. (a), 33334.6, subd. (c) & 33670).[2] Plaintiffs argued these come within the definition of " '[e]nforceable obligations' " (§ 34171, subd. (d)(1)) of the City's former redevelopment agency because the *entirety* of the set-asides to be paid over the life of a redevelopment project was due *ab initio*, and thus survived the abolishment of tax increment in the " 'Great Dissolution' " in 2012 (*Brentwood*, at p. 491).[3] The trial court ruled that the

---

[1] The plaintiffs are residents of the City of Winters (the City) who are allegedly qualified for subsidized housing that purportedly *could* be built in the City; we assume for purposes of this appeal that this is sufficient to confer standing.

[2] Undesignated statutory references are to the Health and Safety Code.

[3] The petition's designation in the trial court of the litigation status of the parties needs to be modified: It included both the Department *and* Michael Cohen, as its Director; this is redundant, and we delete the former as a party. (*Brentwood*, *supra*, 237 Cal.App.4th at p. 492, fn. 3.) The petition also listed the City—as both the successor agency to its former redevelopment agency, and as its housing successor as well (*id*. at p. 491 & fn. 2; §§ 34171, subd. (j), 34173 & 34176, subd. (a)(3))—as a real party in interest, even though the City does not oppose the litigation (indeed, requesting in its answer that the trial court *grant* the requested relief against it). We have thus redesignated the City as a nominal defendant, along with the *other* two nominal defendants who did not take any position on the entry of judgment against them in this dispute (Howard Newens, as the

2

strictly statutory obligation to make set-asides accrued on an *annual* basis and accordingly expired when the Great Dissolution took place; the set-asides therefore were no longer enforceable obligations of the redevelopment agency. It entered judgment in favor of both the defendants and the real parties in interest. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As is generally the case in Great Dissolution appeals, the facts are undisputed and merely serve to provide a contextual framework. Our analysis is concerned principally with statutory interpretation.

The City established its former redevelopment agency (the Winters Community Development Agency) in 1992, and adopted a redevelopment plan for the project area (which consists of about 41 percent of the total land area of the City). In 2008, the City voted to extend the expiration date of the plan to 2033, and the authority of the redevelopment agency to receive tax increment and pay related debts until 2043. In its 2009 five-year redevelopment plan, the City noted that the Sacramento Area Council of Governments had identified a need in the project area for 431 units of subsidized housing; as of that date, none had been built with money from the housing fund.

Auditor-Controller of Yolo County, a neutral stakeholder who is the administrator of the property tax trust fund at issue (*Brentwood*, at p. 492, fn. 3), and Betty Yee, as state Controller). Furthermore, the appellate title did not reflect the amendment that added the "taxing entities" in June 2014, which are properly real parties in interest in the outcome of this litigation because it affects their share of property tax (*id*. at p. 492), and in whose favor judgment was entered as well. These include the City yet again in *this* capacity, along with a mosquito district, a community college district, a school district (the Winters Joint Unified School District, which joined in the Department's brief on appeal), a cemetery district (which was the only real party to argue in the trial court), a flood control district, and the county office of education. We accordingly add them to the appellate title as the correct real parties in interest.

In order to satisfy its constitutionally mandated minimum funding obligation, the Legislature directed redevelopment agencies to transfer tax increment to school and community college districts in funds created for "educational revenue augmentation" or "supplemental educational revenue augmentation" on multiple occasions between 1992 and 2009 (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 245, 248 (*Matosantos I*); *California Redevelopment Assn. v. Matosantos* (2013) 212 Cal.App.4th 1457, 1467 (*Matosantos II*).) In imposing this obligation, the Legislature authorized the redevelopment agencies to borrow from their annual set-asides for their subsidized housing funds, requiring the loans to be repaid within 10 years. (E.g., §§ 33681.7, subd. (b) [2002-2003 fiscal year], 33681.9, subd. (b) [2003-2004 fiscal year], 33681.12, subd. (b) [2004-2005 fiscal year and 2005-2006 fiscal year], 33690, subds. (a)(1)(A) & (c)(2) [2009-2010 fiscal year, to be repaid by June 30, 2015], 33690.5, subds. (a)(1)(A) & (c)(2) [2010-2011 fiscal year, to be repaid by June 30, 2016].) In addition, the redevelopment agencies were authorized generally to defer set-asides if there was insufficient tax increment to satisfy other obligations. (§ 33334.6.) Plaintiffs do not appear to contend that any such sums are owed to the subsidized housing fund from the former redevelopment agency.

The amount of tax increment to which a redevelopment agency is entitled is limited to the amount of its total indebtedness (both existing and executory), less available revenue. Thus, the redevelopment agency must annually prepare a statement of its total indebtedness and submit it to the county auditor (or other responsible officer). (*Matosantos I*, *supra*, 53 Cal.4th at p. 264; *Matosantos II*, *supra*, 212 Cal.App.4th at p. 1465; *Glendale Redevelopment Agency v. County of Los Angeles* (2010) 184 Cal.App.4th 1388, 1393-1394; § 33675, subd. (b).) As noted in the state Controller's final annual report on redevelopment agencies for the fiscal year ending June 2011, the definition of "indebtedness" for the purposes of this form "is not limited to the formal

accounting definition of indebtedness, but is expanded to include all redevelopment obligations," including obligations to the housing fund. This statement of indebtedness "is perhaps the least understood aspect of redevelopment finance. It itemizes all *future* tax increment requirements for the purpose of repaying indebtedness." (Italics added.) The statement is accompanied by a reconciliation document that identifies all changes from the prior year's statement. Moreover, pursuant to the state Controller's instructions for preparing the statement, total indebtedness is increased by the 20 percent obligation for the housing fund (as well as percentages for other similar statutory obligations) so that sufficient revenue is available for the remaining redevelopment obligations. (§ 33675, subd. (f) [for purposes of this statement "the amount an agency *will deposit* in its . . . Housing Fund . . . shall constitute an indebtedness of the agency," italics added].) When the statement is filled out "as directed, an agency will have disclosed: the total amount of tax increment an agency will need to satisfy any and all uses . . . for the life of the project . . . " in addition to the use of tax increment for the current year.

The City's former redevelopment agency filed its final indebtedness statement in 2011 for the 2010-2011 tax year. At that point, the Legislature had enacted the Great Dissolution in June 2011, which the Supreme Court subjected to a stay while it undertook original review of its legality. (*Matosantos I*, *supra*, 53 Cal.4th at pp. 241, 251.) In accordance with the Controller's instructions and statutory directive, the statement showed the "debt" to the housing fund listed in the previous statement of $12,532,563, with a $282,004 "[d]ecrease in [passthrough] required" and $322,072 in payments from tax increment, leaving a balance of $11,928,487 of what is designated as "Principal/Interest Due During Tax Year." (All sums herein are rounded to the nearest dollar.)

Following the Great Dissolution, redevelopment agencies and tax increment per se were abolished as of February 2012 (§§ 34170, subd. (a), 34172, subd. (a)(1);

5

*Matosantos I*, *supra*, 53 Cal.4th at pp. 250-251, 274-275); "all provisions of the Community Redevelopment Law that depend on the allocation of tax increment to redevelopment agencies . . . shall be inoperative" upon the effective date of the act (§ 34189, subd. (a)). Instead, a county's auditor-controller simply allocates to a trust fund an amount of property tax equal to the enforceable obligations of the former redevelopment agency that the successor agency will use to pay the obligations. (§§ 34172, subd. (d), 34182, subd. (c).)

A " '[s]uccessor agency' " submits a document—listing the minimum payments and due dates of enforceable obligations coming within section 34171 over the course of a six-month period—called a " 'Recognized Obligation Payment Schedule' " (ROPS), to the Department for approval. (§ 34171, subds. (j) & (h); *City of Pasadena v. Cohen* (2014) 228 Cal.App.4th 1461, 1463 & fn. 3.)

The City elected to become the successor agency to its former redevelopment agency. It also elected to become the successor housing agency for purposes of administering the housing "asset" fund, which is the successor to the previous fund for subsidized housing. (§ 34176.) In its initial ROPS for the period of January through June 2012, the City listed the roughly $12 million amount identified on its 2011 indebtedness schedule as an outstanding debt to the former housing fund, with a payment due of $169,000. It submitted this ROPS to the Department in April 2012. In response to an inquiry from the Department about the basis of this obligation, the City cited section 33334.2. It explained that it had based its calculation on the amount the former redevelopment agency would have deposited into the former housing fund over the remaining life of the project. The Department notified the City that the set-aside was not required any longer and returned the ROPS for reconsideration. The City filed an amended ROPS I omitting this debt, and did not include it in the ROPS II and III for the period of July 2012 through June 2013.

In what we will call "ROPS IV" for consistency (July through Dec. 2013), the City once again included the $12 million as an outstanding debt to the former housing fund. When the Department requested documentation of the debt, the City responded with a letter from one of the attorneys for plaintiffs, which demanded inclusion of the set-aside in ROPS IV, asserting the opinion that the entire amount of set-aside for the housing fund over the life of the project area was due *ab initio* and simply paid in annual increments (much like a mortgage). The Department again rejected the inclusion of this debt because the obligation expired with the end of redevelopment. This action followed in September 2013.

In denying the petition for writ of mandate, the trial court first rejected the argument that the set-asides from tax increment to be paid to the former housing fund over the life of the project were due "from its initiation, and [were] deferred" within the meaning of section 34171.[4] The trial court pointed out that section 33334.2, subdivision (a), which establishes the set-asides, mandates that "20 percent of all taxes that are allocated to the [redevelopment] agency *pursuant to [s]ection 33670* shall be used . . . for the purpose[] of" subsidized housing (italics added; see § 33334.6, subd. (c) ["taxes allocated . . . pursuant to [s]ection 33670"]), and the cross-referenced statute anticipates annual payments rather than the total of set-asides over the life of the project. As a result, once tax increment was abolished, this ended the source of revenue for the set-asides. As for their alternative argument, invoking another definition that includes "obligations imposed by state law" (§ 34171, subd. (d)(1)(C)), the trial court ruled that this flies in the face of the directive that any obligation depending on allocation of tax increment is

---

[4] To quote the pertinent provision, an " '[e]nforceable obligation' " includes "payments owing to [the subsidized housing fund] of a redevelopment agency, which had been *deferred* as of the effective date of the act adding this part . . . . Repayments shall be transferred to the [housing asset fund] . . . ." (§ 34171, subd. (d)(1)(G).)

7

*inoperative* (§ 34189, subd. (a)) and therefore the set-asides cannot be an obligation under state law.

## DISCUSSION

In truth, we have little to add to the trial court's succinct dispatch of the merits of the petition. We are obligated to respond to the arguments plaintiffs renew at length on appeal. We remain unpersuaded.

**1.0    The Set-asides Are Not "Deferred" for Purposes of Section 34171, Subdivision (d)(1)(G)**

Throughout their argument, plaintiffs beg the central question in characterizing the future set-asides as a "debt" being "owed" to the former housing fund and its successor asset fund. The statutory authority and budgeting procedures on which they rely do not provide any support for their wishful characterizations.

The Legislature does describe the set-asides as an "indebtedness" of the project, as plaintiffs note. (§§ 33334.2, subd. (h), 33334.6, subd. (h).) But the label is being applied to the set-aside paid from tax increment *pursuant to section 33670*, which divvied up the property tax in a redevelopment project levied *each year* between the redevelopment agencies and taxing entities. These sections do not describe *future* payments as a *presently due* indebtedness. The indebtedness to which the Legislature refers is the current year's allocation under section 33670 and *prior* deficits in set-asides authorized under the statutes (§§ 33334.2, subd. (k), 33334.6, subds. (d), (e) & (g)). The same is true of the characterization as indebtedness to which plaintiffs direct us in section 33487 (which mandates set-asides "for redevelopment projects merged pursuant to this article") (§ 33487, subd. (a); see *id.*, subd. (b)). Therefore, these references are not a basis for a claim that the future payments are deferred debt under this definition.

It is also a non sequitor to rely on the inclusion of future housing set-asides from tax increments for purposes of calculating a redevelopment agency's entitlement to tax

8

increment in the indebtedness statement (as we have described above), pursuant to section 33675.[5] That the Legislature authorized (and the Controller instructed) redevelopment agencies to make sure they *plan* for the surcharged set-asides *as well as* the underlying obligations, in order to guarantee that the redevelopment agencies receive sufficient tax increment over the life of the project to satisfy *both* as the set-asides come due in the future, does not transmute the future set-asides into a deferred present obligation.[6] The lengthy focus of plaintiffs on the internal budgeting process of the former redevelopment agency is misfocused as well:  Regardless of the manner in which it had *memorialized* future payments to the former housing fund, this does not *impose* any obligation that is deferred within the meaning of the statute.  The set-asides themselves are based *not* on this identified total indebtedness, but on the tax increment *actually received* after the calculation of total indebtedness.

While the Department's latest instructions for completing an ROPS acknowledge *loans or deferrals* owed to a former housing fund (other than supplemental education augmentation) as an enforceable obligation, this is immaterial on the issue of future set-asides.[7] As we have already noted above, such loans and deferrals relate to *past* obligations to the former housing fund authorized under law.  *These* are what were

---

[5] Plaintiffs invoke the status of the statement as "prima facie evidence" of the former redevelopment agency's indebtedness.  (§ 33675, subd. (h)(1).)  This is, however, in the context of the document's submission to the county Auditor-Controller in support of an allocation of tax increment.

[6] Indeed, the Controller's instructions for the indebtedness statement counsel on the need to anticipate annually the future set-asides even though the amounts would be "difficult to calculate due to the fact that these amounts are primarily dependent *upon actual tax increment receipts* . . . ."  (Italics added.)

[7] Plaintiffs' request that we take judicial notice of the Department's latest instructions for completing an ROPS is denied.  (*People v. Eubanks* (2011) 53 Cal.4th 110, 129, fn. 9.)

"frozen in time" (to use plaintiffs' term) upon the " '[e]nd of [r]edevelopment [a]s [w]e [k]new [i]t.' " (*Brentwood*, *supra*, 237 Cal.App.4th at p. 499.)

This leaves plaintiffs' invocation of section 33333.8. The Department does not respond to this provision explicitly. In pertinent part, it provides, "Every redevelopment agency shall comply with and fulfill its obligations with regard to the provision of affordable housing . . . prior to the time limit on the effectiveness of the redevelopment plan . . . . A legislative body may not adopt an ordinance terminating a redevelopment project area if the agency has not complied with its affordable housing obligations. . . . [¶] (1) The[se] affordable housing obligations . . . shall include . . . : [¶] (A) The obligation to make deposits to . . . the [subsidized housing fund] . . . [and] [¶] (B) The obligation to eliminate project deficits pursuant to [s]ection[] 33334.6 . . . ." (§ 33333.8, subd. (a)(1)(A)-(B).) To iterate yet again, the obligation identified in subdivision (a)(1)(A) is ultimately dependent upon the receipt of tax increment, which has ceased; the obligation in subdivision (a)(1)(B) is to catch up with *past* obligations before terminating a project. As a result, the statute does not create an obligation with respect to future set-asides for the remainder of a project's duration that can be considered "deferred" for purposes of this definition of enforceable obligation.

**2.0  Section 34189 Abrogates any Statutory Obligation Within the Definition of Section 34171, Subdivision (d)(1)(C)**

Attempting to avoid a painful reality, plaintiffs assert at length that regardless of section 34189, the housing set-aside continues to be an obligation under state law that comes within the meaning of section 34171, subdivision (d)(1)(C). Their kaleidoscopic argument flies in the face of the plain meaning of section 34189.

The statute makes a blanket declaration that "*all provisions* of the Community Redevelopment Law that depend on the allocation of tax increment to redevelopment

10

agencies . . . " are inoperative. (§ 34189, subd. (a), italics added). As the housing set-asides are premised on the receipt of tax increment, they are accordingly inoperative.

Plaintiffs invoke " '[e]xpressio unius est exclusio alterius' " (*People v. Johnston* (2016) 247 Cal.App.4th 252, 257, review granted, July 13, 2016, S235041, cited for persuasive value pursuant to Cal. Rules of Court, rule 8.1115; see 2A Singer & Singer, Sutherland Statutes and Statutory Construction (7th ed. 2014 rev.) § 47:23, pp. 406-413, 423-424) as a basis for inferring an exclusion of section 33334.2 from the reach of section 34189 because the latter does not *expressly* include the former, or because section 33334.2 remains on the books. The principle is inapt. Section 34189 is a blanket declaration that *any* provision depending on allocation of tax increment is inoperative, as opposed to choosing some related provisions but not others, which is the basis for the logic in this interpretive principle.

In the same vein of attempting to evade the plain meaning of the statute, plaintiffs reiterate their failed metaphysic that the future set-asides have been already allocated as a statutory obligation under state law, adding that this must be the legislative intent because obligations to the housing fund are not excluded from those considered enforceable. It is not any more persuasive through repetition.

Plaintiffs point to numerous statutory provisions (which we will not repeat) for ongoing responsibilities of successor housing agencies for subsidized housing. The short answer is that these apply only to already encumbered housing funds (the Legislature having made the choice to distribute unencumbered funds to the taxing entities in each county (§ 34177, subd. (d)),[8] or reimbursements for *past* loans from the housing funds and shortfalls in *past* annual set-asides (§ 34176, subd. (e)(6)). Plaintiffs fail to identify

---

[8] The Department has determined that the former redevelopment agency's housing fund does not have any such unencumbered funds available for distribution.

any provision that provides for a postdissolution set-aside from collected property tax, let alone a formula for calculating such a set-aside.  Furthermore, the Legislature expressly stated when enacting the postdissolution housing asset fund that "[t]his section shall not be construed to provide any stream of tax increment financing" (§ 34176, subd. (h)), which eviscerates the inference of legislative intent that plaintiffs would draw.

This leaves an argument that takes longer to explain than refute.  For the housing asset fund created in section 34176, the Legislature decreed it "shall be subject to the provisions of the Community Redevelopment Law ( . . . (commencing with [s]ection 33000)) . . . except as follows" (§ 34176.1), thereafter setting out ways in which the successor housing agency's authority deviates from existing law.  In particular, the statute permits the successor housing agency "[n]otwithstanding [s]ection 33334.2" to expend funds on homeless prevention and rapid rehousing services (§ 34176.1, subd. (a)(2)) and to expend program income anywhere within its jurisdiction "notwithstanding subdivision (g) of [s]ection 33334.2" (§ 34176.1, subd. (c)(1)).  Plaintiffs contend this limited restriction on the effects of section 33334.2 "demonstrates [an] intention that the affordable housing obligations expressed in that section survive dissolution."  This would be a very roundabout and obscure way in which to accomplish such an end, and drafters of legislation are not presupposed to hide the elephant of such a major element inside an apparently unrelated mousehole, when it would have been so much more straightforward to amend section 33334.2 itself to provide that it continues to entail property tax paid to successor agencies notwithstanding section 34189.  (*Brentwood*, *supra*, 237 Cal.App.4th at p. 501.)  We therefore reject this proffered "intent."

12

## DISPOSITION

Plaintiffs' request for judicial notice is denied.  The judgment is affirmed.  Costs on appeal are awarded to the Department.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                                        BUTZ                , J.


We concur:


      NICHOLSON      , Acting P. J.


      DUARTE         , J.