Filed 11/25/19

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF ANAHEIM et al., | C087417 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2017-80002691-CU-WM-GDS) |
| v. | |
| KEELY M. BOSLER, as Director, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James P. Arguelles, Judge. Affirmed.

Rutan & Tucker and William H. Ihrke for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Benjamin M. Glickman and Anthony P. O'Brien, Deputy Attorneys General, for Defendants and Respondents.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts 2.0 and 3.0 of the Discussion.

1

Nearly eight years after the Great Dissolution (see *City of Pasadena v. Cohen* (2014) 228 Cal.App.4th 1461, 1463), in which the political branches of our state government abolished redevelopment agencies (RDA's) because of abuses improperly diverting tax increment (*City of Tracy v. Cohen* (2016) 3 Cal.App.5th 852, 855 (*City of Tracy*)),[1] we continue to encounter schemes in which cities and counties seek to avoid the intended effects of this enactment (given our distinction as the designated appellate forum for these disputes by virtue of Health & Saf. Code, § 34168).[2] This latest appeal involves an effort to foist the pension and retiree healthcare costs (hereafter "retirement costs") for city employees who performed redevelopment-related work onto the successor agency to the now-abolished Anaheim Redevelopment Agency (Anaheim RDA).

Plaintiff City of Anaheim, in its own right and as the successor agency to the Anaheim RDA (collectively "City" unless we need to distinguish the two), and John Woodhead, who works for both entities, brought this 2017 petition for a writ of mandate. The petition sought to overturn the determination that an agreement between the City of Anaheim and the Anaheim RDA to reimburse the City of Anaheim for the retirement costs of its employees who worked for the Anaheim RDA was not an enforceable obligation of the Anaheim RDA, and thus payments to the City of Anaheim for this purpose from the successor agency were not permissible. As defendants, the petition identified the director of the Department of Finance (Department), presently Keely Bosler, in her official capacity; the Department of Finance (a redundant defendant, as we repeatedly point out (e.g., *City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488,

---

[1] As there now exists a substantial corpus of case law defining the various terms of art that are involved in the dissolution law (see *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 45, fn. 3 (*County of Sonoma*)), with which the parties are well familiar, we will simply employ them without further elaboration.

[2] Undesignated statutory references are to the Health and Safety Code.

2

492, fn. 3 (*City of Brentwood*)); the auditor-controller for Orange County (a neutral stakeholder (*ibid.*)); and the oversight board that supervises the operations of the successor agency (*County of Sonoma*, *supra*, 235 Cal.App.4th at p. 45, fn. 2). (Neither of the latter parties appears on appeal; only the former answered the petition.) The trial court entered judgment in favor of the Department, after issuing a lengthy and cogent ruling.

On appeal, petitioners reiterate their claims, which focus on their interpretation of what is a "legally enforceable" required payment from the Anaheim RDA (§ 34171, subd. (d)(1)(C); hereafter § 34171(d)(1)(C)), the purported unconstitutional impairment of contractual rights, and estoppel. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

"As is generally the case in Great Dissolution appeals, the facts are undisputed and merely serve to provide a contextual framework." (*Covarrubias v. Cohen* (2016) 3 Cal.App.5th 1229, 1232 (*Covarrubias*).) As neither party disputes the summary of the facts in the trial court's ruling, we draw them from that source.

Beginning in 1950, the employees of the City of Anaheim have participated in a public retirement system by virtue of the City of Anaheim's contract with the system, which assesses contributions based on actuarial assumptions to fund the employee benefits to which City of Anaheim has agreed. The City of Anaheim also has entered into memoranda of understanding (MOU's) with the representatives of its employees governing the terms and conditions of their employment. The Anaheim RDA never contracted with the retirement system itself on behalf of these joint employees, and did not have an MOU with them. Only about nine RDA's ever directly contracted with the retirement system on behalf of their employees.

In 1973, the City of Anaheim created the Anaheim RDA, designating its city council as the governing body and its city manager as the executive director of the RDA. The City of Anaheim and the Anaheim RDA decided to make use of City of Anaheim

3

employees to perform redevelopment work. The two entities entered into a "Cooperation Agreement" under which the Anaheim RDA would bear the compensation costs of the city employees performing redevelopment work based on the proportion of time performing such duties. It is undisputed that the City of Anaheim and the Anaheim RDA are the joint employers of these workers.

Upon the enactment of the dissolution law, the City of Anaheim elected to become the successor agency. It was able to reassign most of the joint redevelopment employees, except for eight. The record is not clear whether unfunded retirement costs in excess of $9 million are attributable only to the eight employees or is an overall obligation to the former joint employees.

As part of its duties as successor agency, the City of Anaheim must file a list of the enforceable obligations of its former RDA called the "Recognized Obligation Payment Schedule" (ROPS). The nomenclature and frequency of ROPS filings has changed over the years, for which reason we will simply designate them by the month that begins the covered period.

In the January 2012 ROPS and July 2012 ROPS, the Department approved claims of the retirement costs of joint employees. In the January 2013 ROPS, the Department denied the claims for retirement costs, which led to litigation. While the parties were working through this issue, the successor agency did not include claims for retirement costs in the ROPS for July 2013 or January 2014. In the July 2014 ROPS, the Department approved claims for present retirement costs and 83 percent of claims from prior cycles. This approval continued from the January 2015 ROPS through the January 2016 ROPS. In apparent response to these approvals, the City withdrew the issue of these costs from its then-pending litigation against the Department. In the ROPS for fiscal year 2016-2017, the successor agency listed the retirement costs as administrative overhead; the Department reclassified them as enforceable obligations but denied the claims because they had been overfunded in previous cycles. For the fiscal year 2017-

4

2018 ROPS, the Department ruled that retirement costs were not enforceable obligations, leading to the present litigation.

## DISCUSSION

"In truth, we have little to add to the trial court's . . . dispatch of the merits of the petition. We are obligated to respond to the arguments [the City] renew[s] at length on appeal. We [are also] unpersuaded." (*Covarrubias, supra*, 3 Cal.App.5th at p. 1235.)

**1.0      Retirement Costs are not an Enforceable Obligation of the Anaheim RDA**

In matters of statutory interpretation of an agency's governing statutes, we accord a weak deference to the agency's viewpoint where it *has* superior expertise, but the issue ultimately is subject to our de novo review. (*County of Sonoma, supra*, 235 Cal.App.4th at p. 47.)

We begin with disposing of an effectively conceded point. Although there are "penumbras" and "emanations" (*Griswold v. Connecticut* (1965) 381 U.S.479, 484 [14 L.Ed.2d 510, 514]) interspersed in the City's briefing with respect to the sponsor agreement between the City of Anaheim and the Anaheim RDA, this agreement is not an enforceable obligation of the former RDA under section 34171, subdivision (d)(2), regardless of whether its subject might otherwise come within the definitions of an enforceable agreement in subdivision (d)(1) of that statute under settled precedent (e.g., *County of San Bernardino v. Cohen* (2015) 242 Cal.App.4th 803, 814 (*County of San Bernardino*)). The City thus apparently disavows any reliance on the sponsor agreement for the payment of retirement costs: "the Cooperation Agreement does not negate *other* legally sufficient grounds" for an enforceable obligation; "the Cooperation Agreement is not the *only* source giving rise to payment" of retirement costs as an enforceable obligation. (Italics added.) As a result, we do not belabor the unenforceable nature of the Cooperation Agreement itself.

The enforceable obligations of a former RDA include "*legally enforceable* payments required in connection with the agencies' employees, including, but not limited

5

to, pension payments, pension obligation debt service . . . , or other obligations conferred *through a* [MOU]. Costs incurred to fulfill [MOU's] for *layoffs or terminations* of city employees who performed work directly on behalf of the former [RDA] shall be considered enforceable obligations . . . ." (§ 34171(d)(1)(C), italics added.) This language, however, obligates the former RDA *only* to the extent of its own *contractual* costs for joint employees, including any *contractual* costs associated with the *laying off* or *termination of* joint employees, not to *all* costs that are associated with joint employees whom a former RDA has laid off or fired, such as the eight joint employees that the City has identified in the present case.

The City argues that the phrase "agencies' employees" in this statute must be construed to include *other* local entities performing work for the former RDA's and the successor organizations. However, the Department does not dispute the joint-employee *status* of the city employees who worked for the Anaheim RDA. The *determinative* qualification in the sentence is that the payments on behalf of "employees" (whosoever they may be) are *legally enforceable*. That is the beginning and end of the issue. It is also irrelevant that few former RDA's may have contracted directly with the retirement system itself. It is entirely within the Legislature's prerogative in line-drawing to have concerned itself only with a narrow category of employees that does not embrace *by implication* the broader network of joint employees. The City does not explain how it would further the object of dissolution to *expand* the liability of former RDA's to include extracontractual obligations to employees of other entities.

Another irrelevant contention focuses on the declaration in section 34190 of the Legislature's intent "to stabilize the labor and employment relations of [RDA's] and successor agencies . . . under . . . this part." (§ 34190, subd. (a).) This again begs the question of whether there is a legally enforceable contractual obligation to such employees to "stabilize" in the first place, as this provision furthering employment relations does not purport to create legally enforceable substantive duties beyond those

6

that already contractually exist with the City of Anaheim (and the City does not provide any authority to that effect), so we do not need to pursue this inquiry further.

Also unavailing is the City's attempt to analogize to the inapposite provision in section 34179.5 in an effort to "harmonize" that provision with section 34171(d)(1)(C). In *City of Brentwood*, we explained that the Legislature in 2012 added provisions to the dissolution law to audit *transfers* that former RDA's scurried to make to their sponsors *after* the end-of-redevelopment-as-they-knew-it appeared on the horizon in January 2011. This audit was termed the " 'due diligence review' " in order to recoup unauthorized transfers. (*City of Brentwood, supra*, 237 Cal.App.4th at pp. 495, 499.) In *City of Tracy*, we held that in due diligence review, under section 34179.5 the payments to the sponsors that reflected labor costs of sponsor staff who directly provided services for redevelopment activities were not subject to recoupment. (*City of Tracy, supra*, 3 Cal.App.5th at p. 863.) The City does not provide any authority or cogent argument why we must import principles from the distinct due diligence process into the definitions of enforceable obligations for the ongoing liabilities of former RDA's.

We finally come to the heart of the City's argument. Essentially, it claims the retirement costs for the joint employees are legally enforceable obligations of the Anaheim RDA regardless of a contract. To this end the City included a lengthy string cite in a footnote (in its memorandum of points and authorities) about cases generally involving the liability of joint employers in a variety of circumstances. We quote the trial court's response: "The only authority offered is a footnote citing cases in which joint . . . employers were held liable . . . for wage and hour violations, for providing workers' compensation benefits, for injuries to employees, for an employee's job-related torts, or for the obligation to bargain collectively with employees. Petitioners have not cited any cases, and the court likewise has not found any, holding that a joint employer is legally responsible for funding retirement benefits promised by another employer." The trial court then looked to somewhat analogous federal authority under which the duty to make

7

pension contributions under federal law must arise from a direct contractual duty. (*Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.* (9th Cir. 2009) 572 F.3d 771, 776-780 [absent proof of need to pierce corporate veil, nonsignatory not liable]; *Sullivan v. William A. Randolph, Inc.* (7th Cir. 2007) 504 F.3d 665, 668 [no evidence of course of conduct indicating nonsignatory's intent to be bound to contract]; *Olivieri v. P.M.B. Constr., Inc.* (E.D.N.Y. 2005) 383 F.Supp.2d 393, 401, 404.) We agree. The City fails to provide any authority remotely suggesting that there is some extracontractual duty on the part of the Anaheim RDA to the City of Anaheim's employees for the payment of retirement costs.

This leaves the City's exhortation that we should construe the statute in terms of multiple *independent* policy concerns of the Legislature such that reducing the liability of a local entity for retirement costs must somehow be part of the object of eliminating the abusive diversion of tax increment. We have repeatedly made clear that even *within* the dissolution law itself we do not interpret specific statutory provisions in light of an inchoate overall policy (*City of Galt v. Cohen* (2017) 12 Cal.App.5th 367, 379 (*City of Galt*); *County of San Bernardino, supra*, 242 Cal.App.4th at p. 816; *City of Brentwood, supra*, 237 Cal.App.4th at p. 501; *County of Sonoma, supra*, 235 Cal.App.4th at p. 48), a principle that applies with even more relevance to any legislative concerns *outside* the object of a statutory scheme.

## 2.0     No Unconstitutional Impairment of Contract Exists

Plaintiffs proclaim that the dissolution law impaired contractual rights in violation of the state and federal charters. The argument is not any more persuasive now than in the half-dozen other cases in which we have encountered it.

The City cannot assert any claim of unconstitutional impairment of its own contracts, and it cannot assert a violation of contractual rights of others. (*City of Galt, supra*, 12 Cal.App.5th at p. 378; *City of Petaluma v. Cohen* (2015) 238 Cal.App.4th 1430, 1442 (*City of Petaluma*); *City of Brentwood, supra*, 237 Cal.App.4th at p. 503.)

However, as the petition included plaintiff Woodhead, we will view the argument solely through the lens of city employees on whose behalf the Anaheim RDA and the successor agency have been reimbursing the City of Anaheim for retirement costs.

Two prerequisites to the maintenance of a claim for impairment of contractual rights are, tautologically, the existence of a contractual relationship affected by the law at issue, and whether *in fact* there has been a showing that the law substantially impairs that right. (*General Motors Corp. v. Romein* (1992) 503 U.S. 181, 186 [117 L.Ed.2d 328, 336-337]; *City of Galt, supra*, 12 Cal.App.5th at pp. 378-379 [no contract with bondholders to apply proceeds to improvement projects; no showing that bondholders would not be paid]; *City of San Jose v. Sharma* (2016) 5 Cal.App.5th 123, 140 (*City of San Jose*) [no showing that county would default on retirement costs for county employees absent contribution from tax increment]; *City of Petaluma, supra*, 238 Cal.App.4th at pp. 1440-1442 [no contract with bondholders to use bond proceeds for improvement project; no showing of facts of any substantial impairment of bond obligations]; *City of Brentwood, supra*, 237 Cal.App.4th at p. 504 [no showing city would dishonor its agreements with construction contractors if it did not receive tax increment funds].)

The only *contractual* relationships at issue are between the City of Anaheim and the public retirement system for the benefit of its employees, and the City of Anaheim's retirement obligations under the MOU with its employees. Thus, the Anaheim RDA is not a party with *contractual* obligations to make payments to the retirement system on behalf of the joint employees.

Plaintiff Woodhead nonetheless argues that the sponsor agreement was "security" for the City of Anaheim's own contractual obligations. None of the cases he cites are remotely apposite, as each instance involves an impairment of a *party*'s contractual right under a bond agreement, not a third party's independent agreement to subsidize the costs

9

of one of the parties to the contract,[3] or a public entity's *own* contractual obligation to make public retirement contributions being reduced to the detriment of the obvious contractual right of the public employees to a secured pension,[4] for which reason none of these cases warrant further discussion.

Plaintiff Woodhead also does not offer anything other than speculation that the City of Anaheim might not be able to make payments for retirement costs in the future. This is inadequate under our prior cases involving this issue, cited above. If indeed the City's retirement obligations grow odious, it has other means of limiting them through less generous benefits for future employees. We therefore reject the claim of impairment of contract without reaching the issue of whether any such impairment was justified by any overriding legitimate public purpose.

## 3.0     No Basis for Applying Equitable Estoppel is Present

Equitable relief on the basis of an estoppel requires proof that the party asserting estoppel *reasonably* relied on an inducement from the opposing party that resulted in *detriment* to the party; in addition, in the context of seeking to apply estoppel to a public

---

[3] *United States Trust Co. v. New Jersey* (1977) 431 U.S. 1, 11, 18-19 [52 L.Ed.2d 92] (repeal of covenant protecting bonds from market devaluation); *Sutter Basin Corp. v. Brown* (1953) 40 Cal.2d 235, 241-243 (statutory amendment *increasing* obligations of landowners to bondholders); *Goodman v. County of Riverside* (1983) 140 Cal.App.3d 900, 910 (guarantee of property tax to pay part of bond obligations cannot be abrogated by an initiative). There is absolutely no factual showing that the payment of the retirement costs of joint employees was premised in any way on the windfall of tax increment, as opposed to the City's general contractual obligations to pay the retirement costs of its employees whether or not they worked jointly for the Anaheim RDA.

[4] *Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012; *California Teachers Assn. v. Cory* (1984) 155 Cal.App.3d 494; *Valdes v. Cory* (1983) 139 Cal.App.3d 773, all of which we explained were irrelevant to the elimination of tax-increment *subsidies* of a county's employee retirement obligations (*City of San Jose*, *supra*, 5 Cal.App.5th at p. 140), as is *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109 on the same basis.

entity, a party is not entitled to relief where it nullifies a strong rule of public policy. (*City of Brentwood, supra*, 237 Cal.App.4th at p. 504.)

In essence, the City rests on the Department's contradictory approach to approving payments for the retirement costs as an enforceable obligation of the Anaheim RDA. It claims this gave rise to a detrimental reliance in making "actuarial assumptions" of an unspecified nature, and also induced it to abandon a challenge to the disapproval of this expense in the January 2013 ROPS in the City's prior petition for a writ of mandate, the remainder of which was the subject of a depublished opinion of this court.[5]

As we stated several years ago, the Department's approvals of items in a ROPS come with the caveat that the issue can be revisited in a subsequent ROPS, and if a local entity wished to obtain "an ironclad guarantee" that the Department would not revisit the approval in the future, there is a procedure for filing an administrative petition to issue a final and conclusive determination of the issue. (*City of Brentwood, supra*, 237 Cal.App.4th at p. 505, citing § 34177.5, subd. (i).) "Given the Department's express reservation of rights and the existence of a statutory remedy to achieve the same result as the estoppel, what [the City] now urges as reliance, after the fact, is not reasonable." (*City of Brentwood,* at p. 505; accord, *City of Galt, supra*, 12 Cal.App.5th at p. 385.) As for abandoning its challenge to the previous rejection of retirement costs as an enforceable obligation of the Anaheim RDA, the City cannot possibly show detriment because these costs *never were* enforceable obligations, and therefore the City cannot show that either the trial court or this court would have granted the City the relief it

---

[5] In connection with its opening brief, the City sought judicial notice of an unrelated *trial court* judgment—in which a local agency apparently prevailed on the theory of estoppel against the Department—as further support for this contention. We denied the request for judicial notice by order in February 2019 (an action the parties do not acknowledge in their subsequent briefs) and therefore we need note only that the excluded ruling does not have any bearing on the present contention (as the trial court noted).

sought in its prior petition. "Given the absence of [these] element[s], we do not need to consider whether application of estoppel in the present case would nullify public policy." (*City of Brentwood*, at p. 505; cf. *City of Galt*, at p. 385 [finding that equitable estoppel in this context would be contrary to strong public policy].) Given the distinct context of *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2018) 19 Cal.App.5th 61, 127, in which the court concluded employees could properly rely on long-term misrepresentations regarding whether a certain type of compensation was "pensionable," the City's citation of this case does not persuade us to depart from our on-point holdings in both *City of Brentwood* and *City of Galt*.

## DISPOSITION

The Department's request for judicial notice, filed May 23, 2019, is denied as unnecessary to our analysis. The judgment is affirmed. The Department shall recover its costs of appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


  /s/
  Butz, J.


We concur:


 /s/
Robie, Acting P. J.


 /s/
Hoch, J.


12