[Civ. No. 22552.   First Dist., Div. One.   May 3, 1966.]

DOROTHY BRANCHE, Plaintiff and Appellant, v. JACK HETZEL et al., Defendants and Respondents.

Jack C. Hamson for Plaintiff and Appellant.

Lounibos & Lounibos, Leroy J. Lounibos, Harbaugh & Grubb and Robert T. Harbaugh for Defendants and Respondents.

MOLINARI, J.—Plaintiff appeals from a judgment in favor of defendants after a trial by the court without a jury in an action seeking relief against defendants, Jack and Regine Hetzel, who sold a parcel of real estate and certain personal property to plaintiff, and against defendant Byrd, the real estate broker in the transaction. It is contended by plaintiff that she is entitled to recover the excess of her payments over and above the actual damages suffered by the Hetzels and that the trial court erred in failing to make findings as to whether the Hetzels had been unjustly enriched by retention of the payments made by plaintiff.

## Statement of the Case

This case proceeded to trial on the basis of plaintiff's second amended complaint "For Rescission of Contract of Purchase of Realty and Personalty and for Cancellation of Instruments." In this complaint plaintiff alleged that she had purchased certain real and personal property, including a liquor license, from the Hetzels through their agent Byrd; that her assent to the terms of the purchase agreement was obtained by virtue of duress on the part of Byrd and certain specifically alleged factual misrepresentations on the part of the Hetzels and Byrd. Based on these allegations and the further allegation that plaintiff had notified the Hetzels that she rescinded the purchase agreement and had offered to restore to the Hetzels all consideration received by her from them, plaintiff sought relief against the Hetzels in the form of rescission of the subject contract, restoration of all moneys paid by her to the Hetzels as consideration for the purchase of the various items of property, and cancellation of certain instruments relating to the sale transaction. In addition, in the event that rescission was not granted, plaintiff sought damages against Byrd. Following trial, plaintiff sought and was granted leave to amend her complaint to conform to proof. By this amendment plaintiff alleged that subsequent to her notice of rescission the Hetzels took and repossessed the real and personal property which was the subject of the purchase agreement; that the Hetzels caused the real property to be sold at foreclosure sale under the deed of trust securing plaintiff's obligation and bid for the real property at the foreclosure sale the amount due from plaintiff pursuant to the purchase agreement; and that the Hetzels subsequently sold the real and personal property which was the subject of the purchase agreement at a private sale. Based upon these allegations and the further allegations

in relation to the value of the various items of realty and personalty at the time these items were repossessed by the Hetzels, plaintiff prayed for restitution in the sum of $18,000 and for relief from forfeiture.

At the conclusion of the trial the court made findings of fact to the effect that there was no fraud, misrepresentation, duress, or mistake involved in the sale to plaintiff by defendants of the real and personal property; that the property was sold at fair value and for adequate consideration; that thereafter plaintiff abandoned the real and personal property and failed to make the agreed payments of principal and interest; and that subsequently foreclosure proceedings were initiated and concluded by the Hetzels. Based upon these findings of fact the trial court, by way of conclusions of law, concluded that plaintiff was not entitled to any relief in any form against defendants.

## The Facts

The Hetzels, husband and wife, were the owners of certain real property known as the Guerneville Hotel in Guerneville, California. In addition the Hetzels owned certain personal property consisting of the furnishings, equipment and liquor stock contained in this hotel and an On-Sale General Public Premises Alcoholic Beverage License. On May 19, 1960 the Hetzels, through their agent Floyd Byrd, doing business as Golden West Realty Co., entered into an agreement with plaintiff for the sale of these items of realty and personalty. The terms of this sale and the manner of its implementation were evidenced by the following documents: (1) a deposit receipt signed by plaintiff, the Hetzels, and Byrd which recites that $15,000 has been received from plaintiff as a deposit on the purchase of "Guerneville Hotel and Furniture Plus Cash for Stock" and which states that the total purchase price for this property is $50,000, the $35,000 balance of this amount plus interest thereon to become payable in annual installments of $3,600; (2) a promissory note for $35,000 executed on May 24, 1960, by plaintiff in favor of the Hetzels, which note recites that it is secured by a deed of trust and a chattel mortgage; (3) and (4) a deed of trust on the Guerneville Hotel and a chattel mortgage on the furnishings and equipment therein, both of which instruments were executed on May 24, 1960 by plaintiff in favor of the Hetzels; (5) a document entitled "Escrow Agreement" executed on June 14, 1960, and signed by plaintiff and the Hetzels, which agreement recites that (a) the Hetzels have agreed to accept and plaintiff has agreed to

pay $7,500 for the On-Sale General Public Premises Alcoholic Beverage License issued to the Hetzels; (b) the Hetzels have agreed to sell and plaintiff has agreed to buy the liquor inventory of the Guerneville Hotel for a sum not to exceed $500; (c) the Hetzels have agreed to sell and plaintiff has agreed to buy the fixtures and equipment, the business and the goodwill of the Hetzels' business for $2,500; (d) this sum of $10,500 is to be paid by plaintiff to the Hetzels in the following manner: "Said sum shall be represented by the promissory note of . . . [plaintiff] in favor of . . . [the Hetzels], which said note is dated May 24, 1960. . . . Said promissory note . . . is to be secured by a first Deed of Trust . . . [on the Guerneville Hotel]." Following these recitations the document states that the parties thereto agree that the purchase price for the transfer of the liquor license, stock-in-trade, business, fixtures and equipment of the business, and goodwill is to be held in escrow by Frank Finn, Esquire, and not to be paid to the Hetzels until the transfer of the liquor license is approved by the Department of Alcoholic Beverage Control; (6) a grant deed executed by the Hetzels on May 24, 1960 conveying the Guerneville Hotel to plaintiff; (7) a bill of sale to the furnishings and equipment contained in the hotel, which document was excuted on June 7, 1960, by the Hetzels in favor of plaintiff; and (8) various documents relating to the transfer of the Hetzels' liquor license to plaintiff.

As of July 18, 1960 the status of plaintiff and the Hetzels with respect to the sale of the hotel, furnishings, liquor stock and license was as follows: (1) the Hetzels had received the $15,000 down payment less various authorized charges, including escrow expenses and the commission due to Byrd; (2) the Hetzels had received the $35,000 promissory note executed by plaintiff and, pursuant to the terms of the "Escrow Agreement," had turned this note over to Finn, who remained in possession of it; (3) the deed of trust, chattel mortgage, and grant deed had been recorded, the two security devices having been delivered to the Hetzels and the grant deed, along with the bill of sale, having been delivered to plaintiff; (4) the transfer of the liquor license had not been consummated; (5) plaintiff had given the Hetzels a check for $500 and an additional $33 cash payment for the liquor stock as inventoried by plaintiff and the Hetzels; and (6) plaintiff had taken possession of the hotel and its furnishings and equipment; however, the Hetzels continued to help plaintiff in operating the bar.

On July 18, 1960 plaintiff served on the Hetzels a "Notice

of Rescission and Offer of Restoration'' which stated essentially that plaintiff was rescinding the purchase agreement entered into between her and the Hetzels on the grounds that her assent to said agreement was obtained through misrepresentation, duress and mistake and that the consideration therefor had failed through the fault of defendants. Said notice offered to reconvey to the Hetzels the property which plaintiff had purchased from them and demanded that the Hetzels in turn restore to plaintiff the money which the Hetzels had received as consideration for this property.

On September 22, 1960 the Hetzels notified the Sonoma County Land Title Company, the trustee designated in the deed of trust securing plaintiff's note, that plaintiff had defaulted in the performance of her obligations under the subject note and that the title company was authorized to institute foreclosure of the deed of trust. Accordingly, the title company recorded a notice of default on the note and deed of trust; on February 8, 1961, sold the hotel to the Hetzels for $38,016.23, the amount due from plaintiff under the promissory note; and subsequently executed a deed to the property in favor of the Hetzels. With regard to the chattel mortgage, the only testimony in the record relating thereto is that of Jack Hetzel to the effect that he did not know whether the chattel mortgage was ever foreclosed but that he believed it was. Concerning the liquor license, the record indicates that the transfer to plaintiff was never effected and that on September 8, 1960, the Department of Alcoholic Beverage Control denied plaintiff's application for transfer of the license on the ground that plaintiff had abandoned the premises to be licensed.

As to the subsequent disposition of the subject property, Jack Hetzel testified that in the spring of 1961 there was an attempted sale of the hotel, furnishings, liquor stock and license to a Mr. and Mrs. McCray for $52,500; that this sale was never consummated; and that ultimately in 1962 the Hetzels sold the realty and personalty, including the liquor license, to Andrew Fuva and Charles Bergner for a total consideration of $45,500. Finally, plaintiff testified that she had never received any money from the Hetzels for any of the property which was the subject of their original purchase agreement.

### Unjust Enrichment

Before proceeding to discuss the issue of unjust enrichment it should be pointed out that this is the only question to be considered on this appeal since plaintiff's briefs contain no

contentions relating to the other findings made by the court.[1]

■ The principle of unjust enrichment is related to the subject of restitution and forms the basis for the right to restitution upon a quasi-contractual theory of recovery. Accordingly, ''Where one obtains a *benefit* which he may not *justly retain,* he is unjustly enriched,'' and the law creates an obligation, irrespective of the intention of the parties, that such person ''restore the aggrieved party to his former position by return of the *thing* or its *equivalent* in money.'' (1 Witkin, Summary of Cal. Law (1960) § 7, p. 19; see Rest., Restitution, § 1; Rest., Contracts, § 5, com. (a); and see *Philpott* v. *Superior Court,* 1 Cal.2d 512, 521 [36 P.2d 635, 95 A.L.R. 990].) In contending that she is entitled to the excess of her payments over and above the actual damages sustained by the Hetzels on the theory of unjust enrichment, plaintiff relies upon the line of cases beginning with *Freedman* v. *Rector etc. of St. Matthias Parish,* 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], which have allowed recovery to a defaulting vendee in order to prevent the vendor from being unjustly enriched as a result of the vendee's default, even where the default has been wilful. (See *Caplan* v. *Schroeder,* 56 Cal.2d 515, 519 [14 Cal.Rptr. 145, 364 P.2d 321]; *Cupps* v. *Hendricks,* 137 Cal.App.2d 211, 213-214 [289 P.2d 810]; *Major-Blakeney Corp.* v. *Jenkins,* 121 Cal.App.2d 325, 332 [263 P.2d 655]; *Crofoot* v. *Weger,* 109 Cal.App.2d 839, 841-843 [241 P.2d 1017].) As indicated by these cases the underlying purpose of the *Freedman* doctrine is to prevent the unjust enrichment of the seller at the expense of the buyer by requiring the former to refund to the latter payments made under the contract in excess of damages suffered by the seller.

A perusal of the cases which have applied the principle of the *Freedman* case discloses that they dealt with situations involving executory contracts for the purchase of property. Hence, in order to apply the *Freedman* rule to the instant case we must first determine whether the contract between plaintiff and the Hetzels was executory at the time of plaintiff's default. The distinction between an executed and executory contract is defined in Civil Code section 1661 as follows: ''An executed contract is one, the object of which is fully performed. All others are executory.'' ■ ''In an executory

---

[1]Counsel for plaintiff conceded at oral argument that plaintiff's appeal was only from that portion of the judgment which found against plaintiff on the cause of action predicated upon unjust enrichment and encompassed within the allegations of the amendment to the complaint to conform to proof.

contract some act remains to be done, while in an executed contract everything is completed at the time of the agreement without any outstanding promise calling for fulfillment by the further act of either party." (*Linville* v. *Linville*, 132 Cal. App.2d 800, 803 [283 P.2d 34]; *Mather* v. *Mather*, 25 Cal.2d 582, 586 [154 P.2d 684].)     In the instant case the contract of sale between plaintiff and the Hetzels is contained in two documents. The first of these is the "Deposit Receipt," dated May 19, 1960, whereby the Hetzels agreed to sell and plaintiff agreed to buy the "Guerneville Hotel and Furniture" for the price of $50,000, which sum was to be paid by a $15,000 cash payment (the receipt of which was thereby acknowledged) and a $35,000 note, which was to be paid in annual installments of $3,600, with interest at the rate of 6 percent. This agreement also provided that plaintiff was to pay "Cash for Stock." The other document which constitutes the contract of sale is the "Escrow Agreement," dated June 14, 1960. This instrument provided that plaintiff agreed to pay to the Hetzels $7,500 for the on-sale liquor license issued to the Hetzels at the Guerneville Hotel; $2,500 for fixtures, equipment, business and goodwill of said business; and $500 for the stock-in-trade. Said escrow agreement provided that the aggregate sum of $10,500 was *"represented"* (italics added) by the promissory note dated May 24, 1960, in the principal sum of $35,000, which note was to be secured by a first deed of trust upon the real property conveyed by the Hetzels to plaintiff on June 7, 1960, and on which the said business was located.[2] The "Escrow Agreement" also provided that said promissory note was to be held in escrow and that the escrow holder was to pay out from the payments made on account thereof the claims of bona fide creditors of the Hetzels pending the transfer of the liquor license to plaintiff by the Department of Alcoholic Beverage Control. Finally this agreement provided that the escrow holder was to pay the "purchase price or consideration for the transfer of said License, stock-in-trade, business, the fixtures and equipment of said business and the Good Will thereof, *only* after the transfer of said License is approved by the Department of Alcoholic Beverage Control." (Italics added.)

It is apparent from the record, therefore, that the transaction between the parties was essentially as follows: The real property was sold for $40,000; the liquor license for $7,500;

[2]It should be here noted that the Deed of Trust had in fact been already executed on May 24, 1960, and recorded on June 8, 1960.

the fixtures, equipment, business and goodwill for $2,500; and the stock-in-trade for $533,[3] making the aggregate selling price the sum of $50,533. Plaintiff made a payment of $15,533, represented by the down payment of $15,000 recited in the deposit receipt and $533 paid by check and cash for the stock-in-trade. Accordingly, it appears that the down payment of $15,000 was paid on account of the purchase price of the realty and $533 on account of the purchase price for the stock-in-trade. However, since the escrow agreement provided that the price of $10,500 for the liquor license and the personalty was "represented" in the $35,000 promissory note, it also appears that $10,500 of the promissory note was deemed by the parties to represent payment for the license and personalty, and the balance of $24,500 was considered by them as the balance due for the purchase of the realty.

It is apparent that at the time of plaintiff's default the contract of sale was still executory. At this time the liquor license had not been transferred to plaintiff; nor, in fact, has it ever been transferred to her. Moreover, as provided in the escrow agreement, the consideration for the liquor license transfer and the various items of personalty was not to be paid to the Hetzels by the escrow holder until the transfer of the license was approved by the Department of Alcoholic Beverage Control. Since the $10,500 consideration for the license and personalty was included in the $35,000 note, it is clear that at the time of plaintiff's default on the note the sum of $10,500 represented therein was still subject to the provisions of the escrow. We are not persuaded that by virtue of the delivery and recordation of the deed to the realty, the delivery of the "Bill of Sale" for the furnishings and fixtures, and the recordation of the security instruments, the agreement between plaintiff and the Hetzels was fully performed and we are therefore dealing with a default on an executed contract rather than an executory contract. The security instruments were given to secure the payment of the promissory note which was given in payment of the transfer of the liquor license as well as the other items represented in the note. Although title to the realty and the furnishings and equipment had passed by virtue of the delivery of the deed and bill of sale, it is apparent that the transaction between the parties did not involve a sale of separate items of property but consisted of an integrated transaction having as its object the sale of all the

---

[3]The record discloses that in addition to the $500 for the stock-in-trade recited in the escrow agreement, plaintiff also paid the Hetzels $33 additional for said stock.

several items of property and property rights encompassing the operation of the business known as the "Guerneville Hotel." That this was the nature of the sale transaction is clear from the escrow agreement which indicates that the transfer of the liquor license and the sale of the personal property was tied in with the sale of the real property.

In view of the foregoing we are satisfied that the guiding principles of *Freedman* are applicable and controlling here. The record discloses that the Hetzels regained title to the realty by purchasing this property at the trustee's sale for the full amount due on the promissory note; that they repossessed the business, the furnishings and fixtures,[4] and the stock-in-trade; and that they retained the liquor license. In addition the record discloses that the Hetzels received $15,533 in cash from plaintiff. Any portion of this amount which was not offset by the damages suffered by the Hetzels would constitute an unjust enrichment.

Since the trial court made no findings on the issue of unjust enrichment we cannot ascertain whether it failed to consider this issue, even though it allowed the amendment to conform to proof; or whether, having considered the issue, the trial court determined that plaintiff could recover no part of the cash payment of $15,533.[5] It is the duty of the trial court to make findings on every material issue raised by the pleadings. (*Auer* v. *Frank*, 227 Cal.App.2d 396, 406 [38 Cal.Rptr. 684]; *De Burgh* v. *De Burgh*, 39 Cal.2d 858, 873 [250 P.2d 598]; *Mason* v. *Ennes*, 172 Cal.App.2d 99, 104 [342 P.2d 79].) A failure to make a finding on a material issue where there is evidence upon which to base a finding is reversible error. (*Mason* v. *Ennes, supra,* p. 104; *Auer* v. *Frank, supra,* p. 406.) In the case at bench the trial court's failure to make findings with respect to the issue of unjust enrichment cannot, moreover, be absolved under the doctrine of implied findings since this rule operates only where a finding, consistent with the judgment, results by necessary implication from express findings which *are* made. (*Auer* v. *Frank, supra,*

---

[4]As previously noted the record is barren as to whether the chattel mortgage on the furnishings and fixtures was foreclosed.

[5]Although the fact that the trial court granted leave to plaintiff to amend her complaint to conform to proof, thereby allowing her to allege facts showing a basis for relief under the principle of unjust enirchment, is indicative of the existence in the record of evidence to support findings on this issue, the allowance of an amendment to conform to proof does not necessarily require the court to make findings in conformity with such proof where there is evidence supporting contrary findings. (See *Schraeder* v. *Robinson,* 78 Cal.App.2d 328, 334 [177 P.2d 788].)

p. 406; *B. C. Richter Contracting Co. v. Continental Cas. Co.,* 230 Cal.App.2d 491, 504 [41 Cal.Rptr. 98].)

In view of the state of the record it appears to us that, in fairness to all of the parties, a new trial limited to the issue of damages proximately suffered by the Hetzels as a result of plaintiff's breach would be appropriate.[6] (See *Freedman v. Rector etc. of St. Matthias Parish, supra,* p. 23.) We point out, however, that since Byrd was clearly entitled to his commission and since he received no part of the $15,533, other than his commission, he was not unjustly enriched. Accordingly, the issue of unjust enrichment is one that is to be tried only as between plaintiff and the Hetzels.

The judgment is affirmed as to defendant Byrd. With respect to defendants Hetzel, the judgment is reversed insofar as it denies plaintiff restitution of any part of her payment of $15,533 and the trial court is directed to retry the issue of the amount thereof to which plaintiff is entitled, if any. In all other respects the judgment as to defendants Hetzel is affirmed. Defendant Byrd shall have his costs on this appeal. As between plaintiff and the Hetzels, plaintiff shall have costs.

Sullivan, P. J., and Sims, J., concurred.

On May 27, 1966, the opinion was modified to read as printed above.

---

[6]We call attention to the following cases which have considered the proper measure of damages in cases of this kind: As to real property: *Royer v. Carter,* 37 Cal.2d 544, 549-551 [233 P.2d 539]; *Allen v. Enomoto,* 228 Cal.App.2d 798, 802-804 [39 Cal.Rptr. 815]; *Mathews v. MacArthur,* 119 Cal.App.2d 196, 197-198 [258 P.2d 1068]; *Bouchard v. Orange,* 177 Cal.App.2d 521, 525 [2 Cal.Rptr. 388]; *Van Buskirk v. McClenahan,* 163 Cal.App.2d 633, 637 [329 P.2d 924]; as to personal property: *Wickman v. Opper,* 188 Cal.App.2d 129, 132 [10 Cal.Rptr. 291]; *Royer v. Carter, supra,* pp. 549-551; as to contracts covering both real and personal property where no segregation of items is made in the contract: *Wickman v. Opper, supra,* p. 132. Attention is also directed to *Henry's Franchise Leasing Corp. of America v. Honey* *(Cal.App.) 48 Cal.Rptr. 5, involving a contract covering both real and personal property where the court held that the proper measure of damages was the use value of the property and that the vendor was not also entitled to damages measured by the loss of the benefit of his bargain under Civil Code section 3307. However, a hearing has been granted by the Supreme Court in that case. Since the hearing may have been granted for the purpose of reviewing the propriety of the rule as to the measure of damages there invoked, we alert the trial court to the possibility that this rule may be disapproved and that a rule applicable to the facts of the instant case may be propounded.

*Reporter's Note: A hearing was granted by the Supreme Court on January 19, 1966. The opinion of that court, filed July 5, 1966, is reported, *sub nom. Honey v. Henry's Franchise Leasing Corp.,* in 64 Cal.2d 801 [52 Cal.Rptr. 18, 415 P.2d 833].