[Civ. No. 32578.   Second Dist., Div. Three.   Feb. 14, 1969.]

DAVID M. HOLMES, Plaintiff and Respondent, v. JACK STEELE et al., Defendants and Appellants.

Mack, Nast & Boss and Leo Mack, Jr., for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

FORD, P. J.—The defendants Steele have appealed from a judgment in favor of the plaintiff for recovery of $2,000, together with interest thereon from December 21, 1965.[1] No brief has been filed on this appeal by the plaintiff.

Portions of the settled statement (rule 7, Cal. Rules of Court) are as follows: "On or about September 10, 1965, defendant Clifford J. Emmich, Jr., as 'Seller', and plaintiff, as 'Buyer', entered into a written escrow instruction for the sale and purchase of a certain beer tavern business. . . . That said escrow instructions provided in part as follows: 'The seller warrants the premises to be in suitable condition to comply with all regulations of any agency having jurisdiction and/or control over these premises or operation of the business to be conducted therein.' That on or about September 10, 1965, the plaintiff deposited with defendant, Jack Steele & Associates, through its authorized agent and co-defendant, Richard Steele, the sum of $1,000.00, of the total sum of $3,000.00 to be deposited by buyer . . . [and] on or about September 17, 1965, . . . the sum of $1,000.00, of the total sum of $3,000.00 to be deposited by buyer. . . . The defendants, Richard Steele and Jack Steele & Associates, executed receipts showing that the deposits were to be in the 'trust account'. . . . A clause of said escrow instructions was inserted, at neither the request nor the demand of the buyer, nor of the seller, . . . as follows: 'It is expressly agreed and

---

[1] Jurisdiction was in the superior court because one of the causes of action was for declaratory relief. (See *Cook* v. *Winklepleck*, 16 Cal. App.2d Supp. 759, 764-766 [59 P.2d 463].)

understood that the seller is presently obligated to pay to Jack Steele & Associates a brokerage commission in the sum of $2,000.00 for services rendered and completed. Seller and buyer authorize and instruct said broker to retain and apply from the buyer's deposit of $3,000.00 the sum of $2,000.00 as payment in full of seller's obligation. Seller shall credit buyer on account of the purchase price for said payment on his behalf.' The building and premises of the certain beer tavern business . . . were inspected by representatives of the Los Angeles Department of Building & Safety and found to be in violation of certain Building & Safety Code provisions and failed to pass inspection. The plaintiff was informed by the representatives of said Department of such findings and on or about December 21, 1965, the plaintiff served notice of rescission on all defendants. On or about December 28, 1965, the plaintiff made written demand on the defendant, Jack Steele & Associates, for the return of the $2,000.00, and such demand was refused. The purchase . . . was not completed and the escrow never closed. . . .''

In the brief of the defendants Steele it is stated that pursuant to the written escrow instructions the sum of $2,000 was paid to defendant Jack Steele & Associates outside of escrow.

■ Since the premises were not ''in suitable condition to comply with all regulations of any agency having jurisdiction and/or control over these premises or operation of the business to be conducted therein,'' and thus not as represented by the seller, the plaintiff, as buyer, was entitled to rescind the agreement. (Cf. *Riff* v. *Mayhew,* 90 Cal.App.2d 712, 717 [203 P.2d 812].) ■ The effect of a rescission is as follows: ''When a contract is rescinded it is extinguished. Hence, if facts exist that justify a rescission by one party, and he declares a rescission in some effectual manner, he terminates the contract. . . . The contract becomes a nullity; it and each of its terms and provisions cease to be subsisting or enforceable against the other party.'' (12 Cal.Jur.2d, Contracts, § 206, p. 425.)

■ It appears that the seller was liable to the defendants Steele for a broker's commission and that the buyer's money was used for the purpose of discharging that obligation. The question to be resolved is whether, since the provision of the escrow agreement pursuant to which $2,000 of the plaintiff buyer's money was paid to the defendants Steele has, along with the rest of the agreement between the seller and buyer,

become a nullity by reason of the rescission, those defendants can retain the money.

It was a reasonable inference that the defendants Steele were aware of the escrow provision, expressed as a warranty,[2] as to the condition of the property as well as the provision in their favor relating to the payment of $2,000 to them. No contention to the contrary is made. Consequently, their relationship to the matter was such that they were chargeable with the knowledge that the transaction could become a nullity in the event that the condition of the property was not as represented. In the light of that fact they are not in a position to assert that, because of any change of position or of circumstances, they are completely insulated from a duty to return to the plaintiff buyer the sum of $2,000.

██ As stated in *Branche* v. *Hetzel*, 241 Cal.App.2d 801, at page 807 [51 Cal.Rptr. 188]: "The principle of unjust enrichment is related to the subject of restitution and forms the basis for the right to restitution upon a quasi-contractual theory of recovery. Accordingly, 'Where one obtains a *benefit* which he may not *justly retain*, he is unjustly enriched,' and the law creates an obligation, irrespective of the intention of the parties, that such person 'restore the aggrieved party to his former position by return of the *thing* or its *equivalent* in money.' (1 Witkin, Summary of Cal. Law (1960) § 7, p. 19; see Rest., Restitution, § 1; Rest., Contracts, § 5, com.(a); and see *Philpott* v. *Superior Court*, 1 Cal.2d 512, 521 [36 P.2d 635, 95 A.L.R. 990].)"

██ In resolving the question of the application of the principle of unjust enrichment to the present case, some aid is furnished by section 17 of the Restatement of the Law of Restitution. That section is as follows: "A person who has paid money to another in the performance of an agreement with a third person is entitled to restitution from the other if, because of fraud or mistake, the agreement or transfer was ineffective or was voidable and has been avoided, unless the other gave value therefor or changed his position, without

---

[2]In *Gagne* v. *Bertran*, 43 Cal.2d 481, at page 486 [275 P.2d 15], the Supreme Court stated: "For historical reasons warranties have become identified primarily with transactions involving the sale or furnishing of tangible chattels (see Prosser, Torts [1941], pp. 739-740; 1 Williston on Sales [rev. ed., 1948], §§ 195-197), but they are not confined to such transactions. Strict liability has also been imposed for innocent misrepresentations of facts that the maker purported to know, that the recipient relied on in matters affecting his economic interests, and that the maker positively affirmed under circumstances that justify the conclusion that he assumed responsibility for their accuracy."

notice of the cause of avoidance." In the first paragraph of comment b of section 17 it is stated as follows: "*Creditor beneficiary*. A person may agree with a third person to confer a benefit upon another to satisfy an actual or supposed duty owed by the third person to the other; such other is a creditor beneficiary (see Restatement of Contracts, § 133). If this agreement does not result in a contract or if the contract is voidable by the promisor, the creditor beneficiary, like the promisee, cannot enforce it (see Restatement of Contracts, § 140). On the other hand, if the creditor beneficiary has an existing right against the third person and receives the property in discharge of the duty of the third person, the rule stated in § 14 is applicable. As there stated, he is protected against rescission of the transaction unless, at the time of receiving the property, he had notice of a defect in the original contract which would permit rescission as against the promisee (see Illustrations 4, 5 and 6)."

The difficulty in the present case is that both the settled statement on appeal and the findings of fact fail to show any resolution of the issue of whether the defendants Steele had notice, at the time of or prior to the receipt of any of the money paid to them, that there was a defect with respect to the agreement of sale as embodied in the escrow instructions which would permit rescission as against the seller. Consequently, the judgment must be reversed and the cause remanded to the trial court for the purpose of determining that issue since such determination is basic to a proper disposition of the controversy.

The judgment is reversed.

Moss, J., concurred.

COBEY, J., Concurring and Dissenting.—I concur in the reversal but dissent as to its basis. I do not believe that on this record the law of restitution should be applied to the broker's withdrawal of the commission owed him by the seller from the buyer's deposit in escrow. The escrow instructions expressly state that the seller is *presently* obligated to pay the broker a brokerage commission of $2,000 *for services rendered and completed,* and that both the buyer and the seller authorize and instruct the broker to retain and apply said commission from the buyer's deposit in escrow.

I do not think that failure of performance on the part of the broker's principal, the seller, gives rise to any right of rescission as against the innocent broker as contrasted with

the defaulting seller. In the absence of any showing of wrongful conduct on the agent's part, or of circumstances indicating that he contemplated assuming responsibility for his principal's performance of the contract, an agent for a disclosed principal does not become liable for such nonperformance. (See Civ. Code, § 2343; *Bogart* v. *Crosby & Van Haren,* 80 Cal. 195, 196-198 [22 P. 84] ; Rest.2d Agency, § 328, p. 80.)

There is nothing in the record to indicate any culpability whatsoever on the part of the broker in the seller's failure of performance. As the seller's agent, in my opinion, the broker did not impliedly warrant the accuracy of the seller's representations to the buyer and he should not therefore be held liable for any subsequently discovered inaccuracy in them.