Filed 6/2/17

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF GALT et al., | C075897 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2013-80001380-CUWMGDS) |
| v. | |
| MICHAEL COHEN, as Director, etc., | |
| Defendant and Respondent; | |
| CALLANDER ASSOCIATES LANDSCAPE ARCHITECTURE, INC., | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Eugene L. Balonon, Judge. Affirmed.

Best Best & Krieger, Iris P. Yang, Kimberly E. Hood for Plaintiffs and Appellants.

Kamala D. Harris and Xavier Becerra, Attorneys General, Douglas J. Woods, Senior Assistant Attorney General, Mark R. Beckington, Susan K. Smith, and John W. Killeen, Deputy Attorneys General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

1

After Governor Brown announced his intention to dissolve redevelopment agencies, but before the legislation passed, City of Galt entered into an agreement (the Cooperative Agreement) with its former redevelopment agency under which the former redevelopment agency agreed to finance several parts of the redevelopment plan, totaling more than $22,000,000. To obtain money for the financing, the former redevelopment agency issued tax allocation bonds, which were to be repaid using tax increment revenue. With the dissolution of redevelopment agencies discussed but still not signed into law, City of Galt and its former redevelopment agency filed a complaint to validate the Cooperative Agreement. No one responded to the complaint, so the trial court entered a validation judgment.

The Legislature and Governor eventually dissolved redevelopment agencies (the Dissolution Law). The Dissolution Law, on its face, renders unenforceable any agreement between a local agency and its former redevelopment agency (sponsor agreements) during a specified period of time before dissolution took place (the freeze component of the Dissolution Law). The Department of Finance (DOF) determined that the Cooperative Agreement here is unenforceable under the freeze component. City of Galt filed a petition for writ of mandate, but the trial court upheld DOF's determination.

On appeal, City of Galt contends: (1) the state must allow City of Galt to use the proceeds from the tax allocation bonds to fund the Cooperative Agreement projects; (2) the Cooperative Agreement is enforceable because it was the subject of a validation judgment, and (3) equitable estoppel bars DOF from determining that the Cooperative Agreement is unenforceable. None of City of Galt's contentions has merit.

BACKGROUND

As background in this redevelopment dissolution case, we quote parts of the Supreme Court's decision in *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231 (*Matosantos*), which upheld the provisions of the Dissolution Law relevant to this case:

2

"Assembly Bill[] 1X 26 . . . consist[s] of [two] principal components, codified as new parts 1.8 [and] 1.85 . . . of division 24 of the Health and Safety Code. Part 1.8 ([Health & Saf. Code,] §§ 34161 to 34169.5)[1] is the 'freeze' component: it subjects redevelopment agencies to restrictions on new bonds or other indebtedness, new plans or changes to existing plans, and new partnerships, including joint powers authorities (§§ 34162 to 34165). Cities and counties are barred from creating any new redevelopment agencies. (§ 34166.) Existing obligations are unaffected; redevelopment agencies may continue to make payments and perform existing obligations until other agencies take over. (§ 34169.) Part 1.8's purpose is to preserve redevelopment agency assets and revenues for use by 'local governments to fund core governmental services' such as fire protection, police, and schools. (§ 34167, subd. (a).)

"Part 1.85 (§§ 34170 to 34191) is the dissolution component. It dissolves all redevelopment agencies (§ 34172) and transfers control of redevelopment agency assets to successor agencies, which are contemplated to be the city or county that created the redevelopment agency (§§ 34171, subd. (j), 34173, 34175, subd. (b)). Part 1.85 requires successor agencies to continue to make payments and perform existing obligations. (§ 34177.) However, unencumbered balances of redevelopment agency funds must be remitted to the county auditor-controller for distribution to cities, the county, special districts, and school districts in proportion to what each agency would have received absent the redevelopment agencies. (See §§ 34177, subd. (d), 34183, subd. (a)(4), 34188.) Proceeds from redevelopment agency asset sales likewise must go to the county auditor-controller for similar distribution. (§ 34177, subd. (e).) Finally, tax increment revenues that would have gone to redevelopment agencies must be deposited in a local trust fund each county is required to create and administer. (§§ 34170.5, subd. (b),

---

[1]      Further undesignated section references are to the Health and Safety Code.

3

34182, subd. (c)(1).) All amounts necessary to satisfy administrative costs, pass-through payments, and enforceable obligations will be allocated for those purposes, while any excess will be deemed property tax revenue and distributed in the same fashion as balances and assets. (§§ 34172, subd. (d), 34183, subd. (a).)" (*Matosantos, supra,* 53 Cal.4th at pp. 250-251.)

"During the freeze, redevelopment agencies were authorized to continue distributing tax increment pursuant to enforceable obligations, the definition of which *included* 'sponsor agreements' between a former redevelopment agency and its sponsor agency [such as City of Galt and the former redevelopment agency here]. (§§ 34167, subd. (d), 34169, subd. (a)). Postdissolution, however, the definition of 'enforceable obligations' entitled to tax increment from the successor agencies *excluded* all sponsor agreements. (§§ 34171, subd. (d)(2), 34177, subd. (a).)" (*City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 494 (*Brentwood*), original italics, fn. omitted.)

TIMELINE OF RELEVANT EVENTS

Retroactive to **December 31, 2010** – Proceeds from bonds issued by a former redevelopment agency after this date may not be used by the successor agency if they are not encumbered by an enforceable obligation. (§ 34191.4, subd. (c)(2); statute eff. June 27, 2012.)

Retroactive to **January 1, 2011** – After this date, transfers of assets from the former redevelopment agency to the sponsoring agency were "deemed not to be in the furtherance of the Community Redevelopment Law and [] thereby unauthorized." (§ 34167.5; statute eff. June 29, 2011.)

**January 6, 2011** – City of Galt entered into an agreement with real party in interest Callander Associates Landscape Architecture, Inc. (the Callander Agreement). Callander agreed to provide design, engineering, and other services on the Central Galt Corridor Rehabilitation and Union Pacific Railroad (UPRR) Parking Lot projects in

4

exchange for $326,029, with some additional compensation for optional services.    The former redevelopment agency was not a party to this agreement.

**January 18, 2011** – Governor Brown proposed eliminating redevelopment agencies as a partial means of closing the state's projected operating deficit. (*Matosantos, supra,* 53 Cal.4th at p. 250.)

**January 21, 2011** – City of Galt and its former redevelopment agency entered into a Cooperative Agreement under which the City agreed to complete nine redevelopment projects and the former redevelopment agency agreed to reimburse City of Galt a total of $22,015,000 for those projects.  The following projects were specified:  Central Galt Corridor Improvements ($2,000,000), UPRR Parking Lot and Landscaping ($1,000,000), Simmerhorn Commercial Property Acquisition ($3,000,000), Simmerhorn Infrastructure Improvements ($10,100,000), Industrial Way/Live Oak Road Improvements ($1,000,000), SR 99 Water Crossing Improvement ($500,000), Old Town Property Acquisitions ($1,000,000), Theater Property Acquisition and Infrastructure Improvements ($2,000,000), and Brewster Building Rehabilitation ($1,415,000).  Further details of the Cooperative Agreement are provided below.

**February 1, 2011** – The board of directors of the former redevelopment agency passed a resolution authorizing the former redevelopment agency to issue up to $17 million in tax allocation bonds to pay for redevelopment activities in Galt.  The indentures would provide that the bond indebtedness would be paid from tax revenues.

**March 1, 2011** – The former redevelopment agency issued tax allocation bonds in the amounts of $7,720,000 (Series A) and $6,005,000 (Series B) under an Indenture of Trust.

**March 14, 2011** - City of Galt and the former redevelopment agency filed a complaint for validation judgment of the Cooperative Agreement between the City and the former redevelopment agency.

**June 29, 2011** – The Dissolution Law was enacted, as described above.  (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 5X.)

**October 26, 2011** – The superior court entered judgment on the complaint for validation judgment, declaring the validity of the "Cooperative Agreement Between the Redevelopment Agency of the City of Galt and the City of Galt."

**December 29, 2011** – The California Supreme Court upheld the Dissolution Law as constitutional.  (*Matosantos, supra,* 53 Cal.4th 231.)

**February 1, 2012** – Redevelopment agencies in California were dissolved under the Dissolution Law as reformed in *Matosantos*.  (*Matosantos, supra,* 53 Cal.4th at p. 275.)  City of Galt became the successor agency of the Redevelopment Agency of the City of Galt.

**May 15, 2012** – City of Galt, as successor agency, adopted Recognized Obligation Payment Schedules (ROPS I & II), which included the Callander Agreement and project delivery costs under the Cooperative Agreement as enforceable obligations to be paid with tax allocation bond proceeds, for the periods from January 2012 to June 2012 and from July 2012 to December 2012.  The oversight board of the former redevelopment agency approved ROPS I and II.  DOF approved ROPS I and II, with exceptions to that approval not relevant here.

**June 28, 2012** – The oversight board of the former redevelopment agency authorized use of the tax allocation bond proceeds to fund projects in Galt.  DOF did not object to this action by the oversight board.

**August 23, 2012** – City of Galt submitted ROPS III to DOF for the period from January 2013 to June 2013, listing the tax allocation bonds and the Cooperative Agreement as obligations of the former redevelopment agency.  Separately, ROPS III listed the following as enforceable obligations to be paid out of bond proceeds: (1) $118,518 owed to Callander and (2) $7,374,530 payable to "various."

**December 18, 2012** – DOF determined that (1) the Callander Agreement was not an enforceable obligation of the former redevelopment agency because the former redevelopment agency was not a party to the contracts between City of Galt and Callander and (2) the "project delivery costs" under the Cooperative Agreement were not enforceable obligations because there were no contracts in place for the various projects.

**January 30, 2013** – City of Galt, on its own behalf and as successor agency of the redevelopment agency, filed a petition for writ of mandate and complaint for injunctive relief seeking a reversal of the determinations of DOF with respect to the Cooperative Agreement and other contracts relating to redevelopment projects.

**October 28, 2013** – The trial court entered judgment in favor of DOF, denying the petition for writ of mandate.  On the issues relevant to this appeal, the court held:

- Issuance of the tax allocation bonds did not create enforceable obligations with respect to the projects to be funded by the bond proceeds.
- City of Galt's claim that DOF's denial of the plan to use bond proceeds to pay for the projects is an impairment of contracts is premature.
- "Project delivery costs" under the Cooperative Agreement are not enforceable obligations.
- The Callander Agreement is not an enforceable obligation.
- DOF's denial of proposed enforceable obligations related to the Cooperative Agreement, which was the subject of the validation judgment, did not violate the separation of powers doctrine.
- DOF is not equitably estopped from determining that the items proposed by City of Galt are not enforceable obligations.

DISCUSSION

I

*Use of Bond Proceeds*

City of Galt contends that the trial court erred in sustaining DOF's determination concerning the use of bond proceeds to pay for Cooperative Agreement projects (including to meet the obligations of City of Galt on the Callander Agreement). We conclude the trial court did not err.

A.     *Bonds as Enforceable Obligations Argument*

The Dissolution Law includes as enforceable obligations "[b]onds . . . , including the required debt service, reserve set-asides, and any other payments required under the indenture or similar documents governing the issuance of the outstanding bonds of the former redevelopment agency." (§ 34171, subd. (d)(1)(A).) City of Galt argues that, under this provision, not only the payment of the bond debt itself is an enforceable obligation but also payments to fulfill the bond covenants. Specifically, City of Galt contends that the projects named in the Cooperative Agreement and meant to be financed with the bond proceeds are also enforceable obligations under section 34171, subdivision (d)(1)(A). We conclude that the Dissolution Law does not support this interpretation.

There is no dispute that tax increment revenue can be used to pay the enforceable obligation of debt service on the tax allocation bonds. We deal in this part of the discussion only with whether the Cooperative Agreement projects also became enforceable obligations by virtue of the intention of the former redevelopment agency to use the bond proceeds to finance the Cooperative Agreement projects. The simple answer is no.

City of Galt contends:  (1) the plain language of the Dissolution Law "makes the bond covenants, not just the debt service of the bonds, an enforceable obligation" and (2) DOF improperly applied a statute that was not in effect at the time the tax allocation bonds were issued. Neither contention has merit.

8

First, the plain language of the Dissolution Law does not support a finding that the Cooperative Agreement projects became enforceable obligations because the former redevelopment agency intended to finance those projects from the bond proceeds. City of Galt argues that the language of the statute includes such projects as enforceable obligations, but it does not.

As quoted above, section 34171, subdivision (d)(1)(A) makes payment on the debt service of bonds an enforceable obligation. Also included as enforceable obligations are "any other payments required under the indenture." (§ 34171, subd. (d)(1)(A).) But this language is unhelpful to City of Galt. Although the official statement accompanying the bond indenture mentions the Cooperative Agreement projects, it does not make them enforceable obligations. As recounted in City of Galt's brief, the official statement provided: "A portion of the net proceeds of the Bonds will be used to pay all or a portion of the costs of financing redevelopment activities that are of benefit to the Project Area. Actual projects to be financed may vary based upon various considerations to be made by the Agency." In other words, the official statement accompanying the bond indenture provided that bond proceeds would be used in as-yet-to-be-determined ways and subject to future decisions of the former redevelopment agency. Therefore, on its face, the official statement did not require the former redevelopment agency to use bond proceeds to fund any particular project.

Also section 34177, subdivision (i), cited by City of Galt, does not turn any project for which bond proceeds would have been used into an enforceable obligation. That subdivision, in part, provides that successor agencies are required to "[c]ontinue to oversee development of properties until the contracted work has been completed or the contractual obligations of the former redevelopment agency can be transferred to other parties. *Bond proceeds shall be used for the purposes for which bonds were sold unless the purposes can no longer be achieved, in which case, the proceeds may be used to defease the bonds.*" (§ 34177, subd. (i), italics added.) As we have previously held with

9

respect to this provision, "[s]ection 34177 details the obligations of the successor agency; it does not define 'enforceable obligations.' We do not read this provision on the duties of a successor agency to enlarge and supersede the specific definition of an enforceable obligation in section 34171. [Citation.] Here, the purpose for which the [tax allocation bonds] were sold 'can no longer be achieved' because it is prohibited by the enactment of the dissolution law. Therefore, there is no violation of section 34177, subdivision (i)." (*City of Petaluma v. Cohen* (2015) 238 Cal.App.4th 1430, 1440.)

And second, City of Galt's suggestion that DOF improperly applied the Dissolution Law is unconvincing. City of Galt observes that one of the statutes cited by DOF to find that the projects mentioned in the official statement of the bond indenture were not enforceable obligations was passed after the issuance of the bonds, and City of Galt claims that there is no evidence that the Legislature intended for that statute to apply retroactively. We conclude the statute clearly applies, even though it was enacted after the tax allocation bonds were issued.

Former section 34191.4, subdivision (c) was enacted as part of Assembly Bill No. 1484 (2011-2012 Reg. Sess.), after the Supreme Court upheld the Dissolution Law in *Matosantos*. That statute provided that proceeds from bonds issued *on or before December 31, 2010*, "shall be used for the purposes for which the bonds were sold."[2] (Stats. 2012, ch. 26, § 35, italics added.) The implication, of course, is that proceeds from bonds issued *after December 31, 2010*, are not to be used for the purposes for which the bonds were issued. Citing precedent that statutes are normally applied only prospectively (see *Quarry v. Doe I* (2012) 53 Cal.4th 945, 955; see also *City of Emeryville v. Cohen* (2015) 233 Cal.App.4th 293, 308 [" ' "statute may be applied

---

**2** Former section 34191.4, subdivision (c) was amended in 2015. (Stats. 2015, ch. 325, § 21.) The parties have not suggested that this amendment changes DOF's application of the law to this case.

10

retroactively only if it contains express language of retroactivity *or* if other sources provide a clear and unavoidable implication that the Legislature intended retroactive application" ' "]), City of Galt claims this provision should not be applied to the tax allocation bonds, which were issued before Assembly Bill No. 1484 took effect. To the contrary, the reach of the statute was clearly stated: it approved use of "bonds issued on or before December 31, 2010" for the purpose for which the bonds were issued. This specific reference to the date of bond issuance in the statute evinces the Legislature's intent concerning the application of the provision, whether retroactive or prospective. (*City of Emeryville v. Cohen, supra,* 233 Cal.App.4th at p. 310.) Therefore, the argument that the Legislature did not intend for the statute to operate retroactively is without merit.

      B.     *Impairment of Contracts*

      City of Galt contends that not allowing it to use the tax allocation bond proceeds to fund the Cooperative Agreement projects unconstitutionally impairs contracts, namely the obligations to the bondholders. The contention is without merit because (1) City of Galt has no standing to raise the argument and (2) there is no impairment of any obligation. The bondholders will be paid as promised.

      "No State shall . . . make any . . . Law impairing the Obligation of Contracts . . . ." (U.S. Const., art. I, § 10, cl. 1.) And a "law impairing the obligation of contracts may not be passed." (Cal. Const., art. I, § 9.)

      City of Galt's argument is worded in a way that leaves doubt concerning whose constitutional rights are being discussed, whether it is City of Galt's or the bondholder's. If the constitutional rights are City of Galt's, then it has no standing because a municipality may not complain that the state is impairing its contract. (*Star-Kist Foods, Inc. v. County of Los Angeles* (1986) 42 Cal.3d 1, 5-6.) If the constitutional rights are the bondholders', then City of Galt has no standing to assert the rights of others. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 239-242.)

In any event, even if City of Galt had standing to complain that the rights of the bondholders were being violated, the argument is without merit. City of Galt makes no attempt to establish that bondholders will not be paid under the terms of the bonds. Instead, City of Galt claims that "DOF's rejection of the Validation Judgment as an enforceable obligation, and its determination that the [tax allocation bond] proceeds cannot be used to fund the Cooperative Agreement Projects specified in the Validation Judgment" "impermissibly results in an impairment of contract." More specifically, City of Galt argues that, because the law existing at the time the tax allocation bonds were issued allowed issuance of the bonds to fund the Cooperative Agreement projects (see § 34177, subd. (i) ["Bond proceeds shall be used for the purposes for which bonds were sold . . . ."]), DOF could not apply the amended law disallowing the use of the funds for the Cooperative Agreement projects (see § 34191.4, subd. (c) [enacted after issuance of tax allocation bonds]). In support of this argument, City of Galt cites cases for the proposition that the laws in effect at the time bonds are issued define the contractual obligations under the bonds. (See, e.g., *Sutter Basin Corp. v. Brown* (1953) 40 Cal.2d 235, 241 [government cannot impair fulfillment of bond obligations under laws in existence at time of bond issuance].)

The defect in City of Galt's argument is that it does not establish that the former redevelopment agency had an obligation to the bondholders to use the bond proceeds to fund the Cooperative Agreement projects. The obligation to the bondholders is to make the payments required. Citing a statute requiring the former redevelopment agency to use bond proceeds for the purposes for which the bonds were sold does not logically or legally create a duty to the bondholders. Since the former redevelopment agency had no contractual obligation to the bondholders to use the bond proceeds to fund the Cooperative Agreement projects, DOF did not impair those contracts (the bond agreements) when it determined that the bond proceeds could not be used to fund the Cooperative Agreement projects.

12

C.  *Legislative Intent*

City of Galt also contends that the "overarching goals regarding the wind down of redevelopment agencies under the Dissolution Act" support its argument that the tax allocation bond proceeds should be used to fund the Cooperative Agreement projects. Those goals include (1) payment of enforceable obligations and (2) maximizing value for taxing entities. The contention is without merit because (1) the Cooperative Agreement projects are not enforceable obligations and (2) the plain language of the law prevails over conceptions concerning the overarching goals of the Dissolution Law.

As we discussed above, the Cooperative Agreement did not create enforceable obligations. Neither did the validation judgment.

Also, City of Galt fails to establish that the "overarching goals" of the Dissolution Law should prevail over the specific language of the statute. "[W]e are concerned with giving effect to the specific language of a specific statute, not an overarching policy penumbra." (*Brentwood, supra,* 237 Cal.App.4th at p. 501.)

City of Galt cites Dissolution Law statutes providing that (1) oversight boards are intended to operate for the best interests of the taxing entities (§§ 34179, subd. (i); 34181, subds. (d) & (e)) and (2) successor agencies should act in a manner to maximize value and enforce the rights of the taxing entities while overseeing projects until contracted work is completed (§ 34177, subds. (e), (f) & (i)).

None of these statutes contradicts the implication contained in former section 34191.4, subdivision (c) that proceeds from bonds issued after December 31, 2010, are not to be used for the purposes for which the bonds were sold. (Stats. 2012, ch. 26, § 35.) A finding that the Legislature intended for bond proceeds to be used for the purposes for which the bonds were sold regardless of when the bonds were sold would render meaningless former section 34191.4, subdivision (c), which provides that the proceeds from bonds sold on or before December 31, 2010, "shall be used for the purposes for which the bonds were sold." (Stats. 2012, ch. 26, § 35.)

13

In summary, the Cooperative Agreement projects (or the "project delivery costs," as referred to by the parties) were not enforceable obligations of the former redevelopment agency under the Dissolution Law, and DOF did not misapply the law.

II

*Validation Judgment*

City of Galt contends that, because it obtained a judgment validating the Cooperative Agreement with the former redevelopment agency, the Cooperative Agreement projects are enforceable obligations. We conclude that, even assuming that we must give effect to the judgment validating the Cooperative Agreement, the Cooperative Agreement, by itself, did not give rise to enforceable obligations, and the Dissolution Law prohibits creation of new enforceable obligations. Therefore, DOF acted properly in rejecting City of Galt's request to use the tax allocation bond proceeds to complete the Cooperative Agreement projects.

Given this conclusion, we need not consider whether (1) the validation judgment is valid and entitled to res judicata and (2) the Dissolution Law violated the separation of powers doctrine if it had the effect of invalidating the validation judgment. As to those further considerations, we express no opinion.

A "validation judgment forecloses any claims that attack the validity of the [agreement] or its terms. Code of Civil Procedure section 870, subdivision (a) provides in pertinent part that a validation judgment 'if no appeal is taken, or if taken and the judgment is affirmed, shall, notwithstanding any other provision of law . . . become and thereafter be forever binding and conclusive, *as to all matters therein adjudicated or which at that time could have been adjudicated, against the agency and against all other persons, and the judgment shall permanently enjoin the institution by any person of any action or proceeding raising any issue as to which the judgment is binding and conclusive.*' (Italics added.) 'A validation action implements important policy considerations. "[A] central theme in the validating procedures is speedy determination

14

of the validity of the public agency's action." [Citation.] "The text of section 870 and cases which have interpreted the validation statutes have placed great importance on the need for a single dispositive final judgment." [Citation.] The validating statutes should be construed so as to uphold their purpose, i.e., "the acting agency's need to settle promptly all questions about the validity of its action." [Citation.]' [Citation.]" (*Macy v. City of Fontana* (2016) 244 Cal.App.4th 1421, 1433 (*Macy*), original italics.)

We may give full effect to the validation judgment without finding that DOF erred because the Cooperative Agreement did not create enforceable obligations. Careful consideration of the Cooperative Agreement reveals only an agreement that future contracts would be created to complete the Cooperative Agreement projects. City of Galt agrees that future contracts would be necessary to accomplish the Cooperative Agreement projects. It writes: "The Cooperative Agreement . . . is an executory contract between the [former redevelopment agency] and the City [of Galt], which contemplates execution of additional agreements between the City and third parties for the projects specified for which the [former redevelopment agency] promised to reimburse the City." City of Galt continues: "In other words, the Validation Judgment validated the Cooperative Agreement and the Projects specified in the Cooperative Agreement. Agreements to carry out projects covered by the Validation Judgment are part and parcel of that Validation Judgment. To hold otherwise would render the Validation Judgment and Cooperative Agreement meaningless."

The flaw in this argument is where City of Galt makes the jump from the Cooperative Agreement being validated by the validation judgment to the Cooperative Agreement projects (and the agreements necessary to accomplish those projects) being validated by the validation judgment. The judgment did not validate the projects or any future agreements. The validation judgment is conclusive and binding as to the Cooperative Agreement, but not as to any other contracts.

15

"The distinction between an executed and executory contract is defined in Civil Code section 1661 as follows: 'An executed contract is one, the object of which is fully performed. All others are executory.' 'In an executory contract some act remains to be done, while in an executed contract everything is completed at the time of the agreement without any outstanding promise calling for fulfillment by the further act of either party.' [Citations.]" (*Branche v. Hetzel* (1966) 241 Cal.App.2d 801, 807-808.)

The Cooperative Agreement essentially contained a wish list of projects and the amount the former redevelopment agency was willing to put toward those projects. It was an attempt to commit money to as-yet amorphous plans to continue redevelopment in Galt despite Governor Brown's intent, later executed in the Dissolution Law, to dissolve redevelopment agencies and use tax increment revenue for the benefit of the taxing entities. (*Matosantos, supra*, 53 Cal.4th at p. 251; see also *Macy, supra,* 244 Cal.App.4th at pp. 1431-1432.)

The Cooperative Agreement did not commit funds obtained by issuing the tax allocation bonds; indeed, the Cooperative Agreement did not mention issuance of tax allocation bonds or identify a source of money with which the former redevelopment agency intended to finance further redevelopment in Galt.

City of Galt complains that the Dissolution Law cannot interfere with the projects proposed in the Cooperative Agreement. But City of Galt's statement that "[t]o hold otherwise would render the Validation Judgment and Cooperative Agreement meaningless" provides no legal weight to its argument. The effect of the Dissolution Law is to dissolve redevelopment as we know it and prevent the creation of future enforceable obligations under the former law. The Legislature had authority to do that. (*Matosantos, supra*, 53 Cal.4th at p. 262.) While we agree that the inability to enter into future agreements to accomplish the Cooperative Agreement projects renders the Cooperative Agreement meaningless, City of Galt's beef is with the Legislature and the Governor, not with us. The Legislature took away the means and ability to complete the

16

Cooperative Agreement projects, at least to the extent City of Galt does not find some other way to finance those projects.

City of Galt argues the Cooperative Agreement was sufficient to bind the former redevelopment agency to pay for the future projects. It writes: "Such agreements have long been recognized as creating a valid indebtedness or obligation of redevelopment agencies." For this proposition, City of Galt cites California Supreme Court precedent that " 'indebtedness,' " for the purpose of binding a redevelopment agency, " 'encompasses "obligations which are yet to become due . . . ." ' " (*Marek v. Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1081 (*Marek*).)

*Marek* does not help City of Galt. In that case, the redevelopment agency entered into an executory contract with a developer to convert the downtown area of Napa into a shopping district. The plan was to be financed with tax increment revenue. However, the county auditor claimed that the executory contract did not constitute an "indebtedness" under redevelopment law such that tax increment revenue could be disbursed. (*Marek, supra,* 46 Cal.3d at p. 1083.) The Supreme Court concluded that the term "indebtedness" in the redevelopment law should be construed broadly to include such executory contracts (including obligations yet to become due) in order to accomplish the intent of the law to spend tax increment revenue on redevelopment projects. (*Id.* at pp. 1081-1082, 1087.)

Here, we must determine whether the Cooperative Agreement projects are enforceable obligations under the Dissolution Law, not under the former redevelopment statutes. The obvious shift in legislative intent is that tax increment revenue is to be preserved for taxing entities to the extent it is not necessary to fund current enforceable obligations of the former redevelopment agency. With this legislative intent in mind, there is no good reason to construe "enforceable obligation" broadly to include future contractual obligations taken on in furtherance of an executory contract.

17

In *Marek*, the court defined "indebtedness," which did not have a clear definition in the redevelopment statutes. On the other hand, the Dissolution Law includes a definition of "indebtedness." (§ 34171, subd. (e).)[3] However, City of Galt does not cite that definition but instead argues that the broad definition in *Marek* should be applied. The text of the Dissolution Law does not require the broad interpretation of *Marek* and does not refer to future obligations. The Supreme Court's decision in *Marek*, construing the former redevelopment statutes and utilizing the former legislative intent, does not require City of Galt's broad interpretation of "indebtedness" here. (See *Matosantos, supra,* 53 Cal.4th at p. 258 [citing *Marek* as representation of former legislative intent].)

We therefore conclude that the validation judgment does not require a finding in this litigation that the Cooperative Agreement projects and the obligations to be incurred in future contracts to complete those projects are enforceable obligations.

III

*Equitable Estoppel*

City of Galt contends that DOF must be equitably estopped from challenging the use of the proceeds from the tax allocation bonds to fund the Cooperative Agreement projects because (1) DOF did not challenge the resolution of the oversight board authorizing such use of the bond proceeds and (2) DOF did not object to ROPS I and ROPS II, which included use of the bond proceeds to fund the Cooperative Agreement projects. To the contrary, City of Galt's equitable estoppel argument fails because (1) any reliance on DOF's failure to object to the use of the bonds proceeds was

---

[3] " 'Indebtedness obligations' means bonds, notes, certificates of participation, or other evidence of indebtedness, issued or delivered by the redevelopment agency, or by a joint exercise of powers authority created by the redevelopment agency, to third-party investors or bondholders to finance or refinance redevelopment projects undertaken by the redevelopment agency in compliance with the Community Redevelopment Law (Part 1 (commencing with Section 33000))." (§ 34171, subd. (e).) Indebtedness is included in enforceable obligations. (§ 34179.5, subd. (b)(2).)

18

unreasonable and (2) application of equitable estoppel in this circumstance would contravene public policy.

We note that City of Galt is not arguing that DOF is statutorily prohibited from challenging the use of the bond proceeds to fund the Cooperative Agreement projects because DOF did not challenge the oversight board's resolution or the inclusion of the Cooperative Agreement projects in the earlier ROPS. Instead, City of Galt argues that DOF should be equitably estopped from challenging the use of the bond proceeds because DOF failed to make its objection to the use of bond proceeds earlier.

"The equitable relief of estoppel requires proof that the opposing party was aware of the facts and intended reliance on its conduct (or induced a *reasonable* reliance), that the party asserting estoppel was ignorant of the true facts, and that the party asserting estoppel in fact relied on the opposing party's conduct to its own detriment; in addition, a party cannot assert estoppel against a government entity if it would nullify a strong rule of public policy. [Citation.]" (*Brentwood, supra,* 237 Cal.App.4th at p. 504, italics added.)

In *Brentwood*, we rejected the claim that DOF was equitably estopped from rejecting an asserted enforceable obligation that had been approved in prior ROPS submitted to DOF because any reliance on the part of the local agency was unreasonable. Since our discussion in *Brentwood* is pertinent here, we quote it:

"The logic supporting Brentwood's claim of estoppel is strained. The entirety of the argument on this point asserts that Brentwood 'reasonably relied' on the failure of the Department to dispute the listing of PIA [public improvement agreement] projects in ROPS I and II as enforceable agreements (or the inclusion of actual payments made for PIA projects in ROPS III) 'to move forward with the projects' (by which we assume Brentwood means it entered into the construction contracts with third parties).

"This argument founders on the reasonability of the reliance on the Department's previous failure to raise any objection to the inclusion of PIA projects as enforceable

19

obligations. As noted above, in its previous determination letters involving ROPS I to ROPS III, the Department each time informed Brentwood that past approvals would not prevent it from revisiting the validity of including an item on a future ROPS. If Brentwood had wanted an ironclad guarantee that approval of an enforceable obligation would be ongoing, it had the statutory remedy of petitioning the Department for a 'final and conclusive' determination of approval for subsequent payments for that enforceable obligation. (§ 34177.5, subd. (i).) Given the Department's express reservation of rights and the existence of a statutory remedy to achieve the same result as the estoppel, what Brentwood now urges as reliance, after the fact, is not reasonable. Given the absence of this element, we do not need to consider whether application of estoppel in the present case would nullify public policy." (*Brentwood, supra,* 237 Cal.App.4th at pp. 504-505, fn. omitted.)

The same absence of reasonableness defeats City of Galt's claim of equitable estoppel. First, City of Galt did not avail itself of the statutory means of obtaining a "final and conclusive" determination of approval for subsequent payments for the proposed enforceable obligation. (§ 34177.5, subd. (i).) And second, City of Galt's efforts, starting with entering into the Cooperative Agreement and continuing through obtaining the validation judgment, came after Governor Brown revealed that redevelopment as we knew it was in peril. In other words, City of Galt saw the writing on the wall (end of tax increment financing for redevelopment) and tried to devise a plan to avoid it. That the plan was not successful in light of the state's authority over redevelopment should not surprise City of Galt.

Another reason to reject City of Galt's equitable estoppel argument is that it would nullify a strong rule of public policy, namely, that tax increment revenue should be released to local taxing entities for use by "local governments to fund core governmental services" such as fire protection, police, and schools. (§ 34167, subd. (a).). This public policy, as determined by the Legislature, would be unjustifiably nullified if local agencies

20

were allowed to cite earlier actions of DOF, which made preliminary and perhaps unstudied decisions, to claim that the public policy decisions of the Legislature cannot be given effect.

DOF is not equitably estopped from challenging the use of the bond proceeds for the Cooperative Agreement projects.

DISPOSITION

The judgment is affirmed.  The Department of Finance is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


      NICHOLSON      , Acting P. J.


We concur:


      ROBIE      , J.


      MURRAY      , J.